**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| |
|---|
| KENNETH PETERSON, et al., |
| Plaintiffs, |
| v. |
| JBS USA FOOD COMPANY HOLDINGS, TYSON FOODS, INC., CARGILL, INC., and NATIONAL BEEF PACKING COMPANY, LLC, |
| Defendants. |

Case No. 0:19-cv-01129-JRT-HB

**DEFENDANTS' REPLY TO PLAINTIFFS' OMNIBUS OPPOSITION TO THE MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.   Plaintiffs Have Not Pleaded Any Injury And Lack Article III Or Antitrust Standing To Bring This Action ............................................................................... 2

II.  Plaintiffs' Confidential Witnesses' Allegations Do Not Provide Direct Evidence Of A Conspiracy ......................................................................................... 4

III. Plaintiffs' "Parallel Conduct" And "Plus Factor" Allegations Do Not Provide Indirect Evidence Of A Conspiracy ...................................................................... 7

    a.  Defendants' Conduct Was Rational And Not Parallel ...................................... 7

        i.    Defendants' Individual Slaughter Volumes Independently *Increased* During The Class Period ................................................................... 7

        ii.   Defendants Did Not Close Or Idle Plants In Parallel ................................. 8

        iii.  Defendants' Procurement Practices Are Rational And Unilateral.............. 9

        iv.  Plaintiffs' Import Claims Are Implausible.................................................. 11

    b.  Plaintiffs Ignore Defendants' Plus Factor Arguments ...................................... 12

        i.    Generic Industry Characteristics Are Not Plus Factors ............................ 12

        ii.   Generic Public Statements Are Not Plus Factors...................................... 12

        iii.  Defendants' Actions In Unrelated Industries Cannot Be A Plus Factor... 13

        iv.  Defendants Acted In Their Own Self-Interests.......................................... 14

IV. Plaintiffs' Claims Are Untimely.................................................................................. 14

V.  Plaintiffs' State Claims Should Be Dismissed ....................................................... 15

    a.  Rule 23 Bars Plaintiffs From Suing Under The Laws Of States Where They Suffered No Injury ...................................................................................... 15

    b.  Rule 23 Does Not Permit Indirect Plaintiff Class Actions Under Illinois State Law ........................................................................................................... 17

    c.  Plaintiffs Have Not Sufficiently Pleaded *Intra*state Conduct As Required Under Mississippi Law ...................................................................................... 18

    d.  Three of Plaintiffs' State Claims Are Barred By *Illinois Brick*......................... 18

    e.  *AGC* Bars Many Of Plaintiffs' State Antitrust Claims ..................................... 19

    f.  *AGC* Bars Claims Under The Laws Of Michigan, Missouri, Nevada, New Hampshire, New Mexico, And Rhode Island .................................................. 22

    g.  Plaintiffs Fail To Plead Consumer Protection Claims In Any State................ 25

i.    Plaintiffs Have Not Met Their Burden Under Rule 9 ............................... 25

ii.    Eight Consumer Statutes Do Not Apply To Price-Fixing Allegations ..... 26

iii.    Plaintiffs Fail To Plead Necessary Intrastate Conduct In Three States .... 28

h.  All Of Plaintiffs' Unjust Enrichment Claims Fail ............................................ 29

CONCLUSION ............................................................................................................. 32

# TABLE OF AUTHORITIES

## CASES

*American Tobacco Co. v. United States,*
     328 U.S. 781 (1946) ........................................................................................ 9

*Anderson v. Dairy Farmers of Am., Inc.,*
     2010 WL 1286181 (D. Minn. Mar. 29, 2010) ........................................... 15

*Ashcroft v. Iqbal,*
     556 U.S. 662 (2009) ........................................................................................ 5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
     459 U.S. 519 (1983) ............................................................................... passim

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) .................................................................................. 2, 3

*Berigan v. United States,*
     257 F.2d 852 (8th Cir. 1958) ..................................................................... 10

*Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*,
     203 F.3d 1028 (8th Cir. 2000) ................................................................ 9, 14

*Blum v. Yaretsky,*
     457 U.S. 991 (1982) ..................................................................................... 16

*Braden v. Wal-Mart Stores, Inc.,*
     588 F.3d 585 (8th Cir. 2009) ..................................................................... 16

*Byre v. City of Chamberlain,*
     362 N.W.2d 69 (S.D. 1985) ........................................................................ 24

*Cortellesso v. Cortellesso,*
     1997 WL 839911 (R.I. Super. Apr. 29, 1997) .......................................... 24

*De Havilland v. FX Networks, Inc.,*
     21 Cal. App. 5th 845 (2018) ....................................................................... 31

*E-Shops Corp. v. U.S. Bank Nat. Ass'n*,
  678 F.3d 659 (8th Cir. 2012) ...................................................................... 25

*Ellis v. Smith Grading & Paving, Inc.*,
  366 S.E.2d 12 (S.C. Ct. App. 1988) ............................................................ 31

*Embree Const. Group, Inc. v. Rafcor, Inc.*,
  411 S.E.2d 916 (N.C. 1992) ........................................................................ 30

*ERI Max Entertainment Inc. v. Streisand*,
  690 A.2d 1351 (R.I. 1997) .......................................................................... 27

*Everest v. Leviton Mfg. Co.*,
  2006 WL 381832 (Me. Sup. Ct. Jan. 13, 2006) .......................................... 30

*Ferrari v. Best Buy Co.*,
  2015 WL 2242128 (D. Minn. May 12, 2015) .............................................. 16

*Garrard v. Gateway Fin. Servs., Inc.*,
  207 P.3d 1227 (Utah 2009) ......................................................................... 27

*Gen. Insulation Co. v. Eckman Constr.*,
  992 A.2d 613 (N.H. 2010) ........................................................................... 31

*Ginsburg v. InBev NV/SA*,
  623 F.3d 1229 (8th Cir. 2010) ...................................................................... 4

*In re Gentiva Sec. Litig.*,
  932 F. Supp. 2d 352 (E.D.N.Y. 2013) ........................................................... 6

*Gibbons v. Nuckolls, Inc.*,
  216 S.W.3d 667 (Mo. 2007) ........................................................................ 19

*Hinds v. Wachovia Bank N.A. et al.*,
  700 F. Supp. 2d 378 (S.D.N.Y. 2010) ........................................................... 6

*IBP, Inc. v. Glickman*,
  187 F.3d 974 (8th Cir. 1999) .................................................................... 9, 10

*In re Aftermarket Filters Antitrust Litig.*,
  2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ................................................ 20

iv

*In re Aluminum Warehousing Antitrust Litig.*,
  2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014) ............................................................ 22

*In re Auto. Parts Antitrust Litig.*,
  50 F. Supp. 3d 836 (E.D. Mich. 2014) .................................................................... 18

*In re: Auto. Parts Antitrust Litig.*,
  2015 WL 10376960 (E.D. Mich. Dec. 30, 2015) ...................................................... 18

*In re Automotive Parts Antitrust Litig.*,
  29 F. Supp. 3d 982 (E.D. Mich. 2014) .................................................................... 30

*In re Blood Reagents Antitrust Litig.*,
  266 F. Supp. 3d 750 (E.D. Pa. 2017) ...................................................................... 12

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
  155 F. Supp. 2d 1069 (S.D. Ind. 2001) .................................................................... 25

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) ...................................................................... 21

*In re Canadian Imp. Antitrust Litig.*,
  470 F.3d 785 (8th Cir. 2006) ................................................................................ 3

*In re Commodity Exch., Inc.*,
  213 F. Supp. 3d 631 (S.D.N.Y. 2016) .................................................................... 13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) .......................................................... 16

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  2015 WL 3988488 (N.D. Ill. June 29, 2015) ..................................................... 22, 23

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  362 F. Supp. 3d 510 (N.D. Ill. 2019) ...................................................................... 28

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011) .................................................................... 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................................. 20

v

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...................................................... 22

*In re Graphics Processing Units*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................... 27

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
383 F. Supp. 3d 187 (S.D.N.Y. 2019).................................................. passim

*In re Lipitor Antitrust Litig.*,
336 F. Supp. 3d 395 (D.N.J. 2018) ........................................................... 17

*In re Milk Prod. Antitrust Litig.*,
84 F. Supp. 2d 1016 (D. Minn. 1997) ....................................................... 14

*In re Nash Finch Sec. Litig.*,
502 F. Supp. 2d 861 (D. Minn. 2007) ......................................................... 6

*In re Packaged Ice Antitrust Litig.*,
723 F. Supp. 2d 987 (E.D. Mich. 2010) ...................................................... 6

*In re Packaged Seafood Prod. Antitrust Litig.*,
242 F. Supp. 3d 1033 (S.D. Cal. 2017)..................................................... 26

*In re Polyurethane Foam Antitrust Litig.*,
799 F. Supp. 2d 777 (N.D. Ohio 2011)..................................................... 26

*In re Pool Products Distribution Market Antitrust Litigation*,
988 F. Supp. 2d 696 (E.D. La. 2013) ....................................................... 12

*In re Pork Antitrust Litig.*,
2019 WL 3752497 (D. Minn. Aug. 8, 2019) ...................................... 7, 9, 12

*In re Pre-Filled Propane Tank Antitrust Litigation*,
893 F.3d 1047 (8th Cir. 2018) .................................................................. 18

*In re Suboxone Antitrust Litig.*,
64 F. Supp. 3d 665 (E.D. Pa. 2014) .......................................................... 19

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017) ................................................................... 16

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) ................................................................. 16

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
2018 WL 1189327 (D. Minn. Mar. 7, 2018) ............................................ 16

*In re TFT-LCF (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) .................................................. 18

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
2014 WL 943224 (D. Minn. Mar. 11, 2014) ........................................... 16

*Ireland v. Microsoft Corp.*,
2001 WL 1868946 (Mo. Cir. Ct. Jan. 24, 2001) ................................ 19, 24

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ............................................................................. 15

*Kopel v. Kopel*,
229 So. 3d 812 (Fla. 2017) ................................................................... 30

*LaChance v. U.S. Smokeless Tobacco Co.*,
931 A.2d 571 (N.H. 2007) .................................................................... 28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................. 11

*McDonald v. Johnson & Johnson*,
722 F.2d 1370 (8th Cir. 1983) ................................................................ 3

*Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*,
761 So. 2d 1256 (Fla. 3rd DCA 2000) ................................................... 28

*Minuteman, LLC v. Microsoft Corp.*,
795 A.2d 833 (N.H. 2002) .................................................................... 23

*Nat'l Farmers' Org., Inc. v. Associated Milk Producers., Inc.*,
850 F.2d 1286 (8th Cir. 1988) ................................................................ 3

*National Society of Professional Engineers v. U.S.*,
435 U.S. 684 (1978) ............................................................................. 10

*Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*,
   423 P.3d 605 (Nev. 2018) .......................................................................... 22

*Olin v. Dakota Access, LLC*,
   910 F. 3d 1073 (8th Cir. Dec. 13, 2018) ................................................... 25

*Perret v. Wyndham Vacation Resorts, Inc.*,
   846 F. Supp. 2d 1327 (S.D. Fla. 2012) ...................................................... 25

*Phila. Indem. Ins. v. Pace Suburban Bus Serv.*,
   67 N.E.3d 556 (Ill. Ct. App. 2016) ............................................................ 31

*Precision Rx Compounding, LLC v. Express Scripts Holding Co.*,
   2016 WL 4446801 (E.D. Mo. Aug. 24, 2016) ............................................ 12

*Rapp v. Green Tree Servicing, LLC*,
   302 F.R.D. 505 (D. Minn. 2014) ................................................................ 29

*Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
   711 F.3d 754 (7th Cir. 2013) ...................................................................... 5

*Roth v. Life Time Fitness, Inc.*,
   2016 WL 3911875 (D. Minn. July 14, 2016) ............................................. 17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) .................................................................................... 17

*Sheet Metal Workers Local 441 v. GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) ........................................................ 27

*Siegel v. Shell Oil Co.*,
   480 F. Supp. 2d 1034 (N.D. Ill. 2007) ...................................................... 26

*Smith v. Glenmark Generics, Inc., USA*,
   2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014) ................................... 30

*Snap Advances LLC v. SHG of Illinois, LLC*,
   2019 WL 7505555 (D. Utah Feb. 12, 2019) .............................................. 27

*Sobel v. Franks*,
   633 N.E.2d 820 (Ill. Ct. App. 1994) .......................................................... 30

*Solyom v. World Wide Child Care Corp.*,
   2015 WL 6167411 (S.D. Fla. Oct. 15, 2015) ............................................................. 28

*Summerhill v. Terminix*,
   637 F.3d 887 (8th Cir. 2011) ................................................................................... 14

*Thunander v. Uponor, Inc.*,
   887 F. Supp. 2d 850 (D. Minn. 2012) ...................................................................... 16

*U.S. v. Bame*,
   721 F.3d 1025 (8th Cir. 2013) ................................................................................. 31

*UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*,
   599 A.2d 1033 (R.I. 1991) ....................................................................................... 24

*Williamson Oil Co. v. Philip Morris USA*,
   346 F.3d 1287 (11th Cir. 2003) ............................................................................... 12

*Witherspoon v. Philip Morris Inc.*,
   964 F. Supp. 455 (D.D.C. 1997) .............................................................................. 25

*In re Zinc Antitrust Litig.*,
   155 F. Supp. 3d 337 (S.D.N.Y. 2016) ........................................................................ 6

### Statutes And Other Authorities

U.S. Gov't Accountability Off., GAO-18-296, U.S. Department of
   Agriculture:  Additional Data Analysis Could Enhance Monitoring of
   U.S. Cattle Market (Apr. 2018) ............................................................................... 13

Mass. Gen. Laws Ann. Chapter 93A, § 9 ...................................................................... 28

Nev. Rev. Stat. § 598A.050 ......................................................................................... 22

N.H. Rev. Stat. Ann. § 356:14 ..................................................................................... 22

N.H. Rev. Stat. Ann. § 358-A:2 .................................................................................... 28

R.I. Gen. Laws § 6-36-2(b) ......................................................................................... 24

S.D. Codified Laws § 37-1-22 ...................................................................................... 24

# INTRODUCTION

Plaintiffs have had three chances to plausibly allege—and an additional opportunity to defend—their claim that since 2015 Defendants engaged in a concerted scheme to "suppress throughput of beef" or to "artificially depress" the number of cattle they purchased from feedlots or the amount of beef they sold to retail entities.  Comp. ¶ 1.[1]  All of their attempts fall short of stating a claim under the Sherman Act or any of the 46 state laws identified in the Complaint.    Instead, Plaintiffs allege that Defendants' beef production *increased* and retail beef prices *fell* by six percent during the alleged conspiracy.  If Plaintiffs' allegations are true, they were not injured and lack both Article III and antitrust standing, and the alleged conspiracy is simply not plausible.

Plaintiffs have borrowed heavily from the allegations and arguments in the *In re Cattle Antitrust Litigation* ("*R-CALF*") litigation.[2]    There, as here, Plaintiffs rely on unidentified confidential witnesses and speculative statements that do not substantiate a conspiracy claim.  Moreover, their statements about Defendants' reduced purchases and slaughter of fed cattle are as consistent with unilateral, self-interested behavior as they are with a conspiracy, and fail to state a claim for that reason alone.  MTD 51–52.[3]  Plaintiffs

---

[1] Plaintiffs' Omnibus Opposition to Defendants' Motion to Dismiss The Second Amended Class Action Complaint 1, (D. Minn. Jan. 13, 2020), ECF No. 134 ("Opp.").

[2] *Compare* Second Consolidated Amended Class Action Complaint, *In re Cattle Antitrust Litig.*, No. 19-CV-1222 (D. Minn. Oct. 4, 2019), ECF No. 125 *with* Second Amended Class Action Complaint, (Nov. 22, 2019), ECF No. 114 ("Compl.").

[3] Defendants' Memorandum In Support Of The Motion To Dismiss The Second Amended Class Action Complaint, (Dec. 10, 2019), ECF No. 118 ("MTD").

argue that Defendants did not have unilateral reasons to reduce slaughter volumes. Opp. at 18–22, 38–39. But their own allegations explain the "market dynamics" that caused slaughter volumes to decrease: tight cattle supplies caused historically high prices for cattle, which resulted in low margins. Compl. ¶¶ 5, 66.

Plaintiffs fail to allege parallel action, pointing instead to actions that were neither parallel nor proximate, including plant closures occurring years apart (most before the alleged conspiracy began) or to general industry-wide data that does not differentiate (as it must) between defendants. MTD 17–28. Without defendant-specific allegations, Plaintiffs provide the Court with no basis to analyze which or how many Defendants reduced their cattle purchases or production volumes. Further, Plaintiffs fail to allege "plus factors" tending to show collusion, pointing only to ordinary marketplace behavior, and ignoring the federal government's conclusion that ordinary forces—not collusion—accounted for the fall in fed cattle prices. Opp. 31–38. The confidential witness allegations cannot fill the voids in Plaintiffs' claims.

Here, as in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007), Plaintiffs' federal and state law claims should be dismissed with prejudice rather than sending the parties into inevitably costly discovery.

## ARGUMENT

### I.    Plaintiffs Have Not Pleaded Any Injury And Lack Article III Or Antitrust Standing To Bring This Action

Plaintiffs must plead facts demonstrating they suffered non-speculative damages due to Defendants' alleged antitrust violations. MTD 36–37 (citing *In re Canadian Imp.*

*Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006)).  Plaintiffs must allege facts showing that Defendants' conduct caused the price of retail beef products they purchased to increase.  *See, e.g.*, *Nat'l Farmers' Org., Inc. v. Associated Milk Producers., Inc.*, 850 F.2d 1286, 1305 (8th Cir. 1988), *amended*, 878 F.2d 1118 (8th Cir. 1989).  Plaintiffs have not done so.[4]

*First,* Plaintiffs allege that Defendants' actions "sever[ed]" the historic correlation between fed cattle prices and retail beef prices.  Opp. 51,  Compl. ¶ 19.  But Plaintiffs do not allege any facts suggesting that retail beef prices rose because of the alleged disconnect. The Complaint alleges "[i]n a functioning market, lower cattle prices would lead to lower beef prices."  Compl. ¶ 6.  And that is what happened.  Retail beef prices *fell* by 6%, *id.* ¶ 19, precluding any claim of injury.

*Second,* Plaintiffs allege that beef prices have been "fixed, raised, stabilized, or maintained at artificially inflated levels," and they suffered harm "that is concrete and particularized and actual or imminent."  Opp. 50 (citation omitted).  These are conclusory assertions that do not show any actual injury.  *Twombly*, 550 U.S. at 555 (2007); *McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1374 (8th Cir. 1983).

*Third,* Plaintiffs contend they were injured because they "are at the end of the distribution chain and thus bear the brunt of inflated beef prices."  Opp. 51.  But this

---

[4] Though the *R-CALF* and *Peterson* complaints share many defects, there is one important distinction between them.  Plaintiffs here have not alleged any facts on which to conclude they have standing to sue.  Consequently, this memorandum will focus first on this unique deficiency in the Complaint.

assumes that beef prices were inflated; that intermediaries always pass on increases to retailers; *and* that retailers always pass on increases to consumers.  These are unwarranted conclusions in the absence of any facts.  *See In re Canadian Imp. Antitrust Litig.*, 470 F.3d at 791 ("'[V]aguely defined links' in the chain of causation . . . [are] insufficient to establish antitrust standing."); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235 (8th Cir. 2010) (finding antitrust injury allegation of "higher retail beer prices" to be "speculative" where "beer is sold to consumers through a three-tier distribution system.").

*Finally*, Plaintiffs contend that "absent a conspiracy retail prices would have been lower." Opp. 4–5.  But Plaintiffs compare actual and modeled *wholesale*—not retail— prices. *Id.* 5.  Defendants sell boxed beef to wholesalers and retailers, not retail beef to consumers.  Given the intermediaries between Defendants and Plaintiffs, Compl. ¶ 58, and the absence of any allegations about how retail competition may affect retail prices, Plaintiffs cannot assume that wholesale and retail prices mirror one another or rely on that unexplained assumption to claim an actionable injury.

## II.    Plaintiffs' Confidential Witnesses' Allegations Do Not Provide Direct Evidence Of A Conspiracy

As in *R-CALF*, Plaintiffs rely heavily on allegations by two confidential witnesses. Compl. ¶¶ 69–84, 105–15.  But Plaintiffs never provide enough information about either witness for the Court to credit their allegations, MTD 6–17, and Plaintiffs' arguments to the contrary are insufficient to send this sprawling conspiracy case into costly discovery.

Plaintiffs contend they need not provide meaningful details about these witnesses because this case is not subject to the heightened pleading standard applicable to securities

cases.  Opp. 13–15.  But Plaintiffs' allegations must still plausibly support their claims.
*Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).  There is good reason to believe that the
confidential witnesses "may be ill-informed," "acting from spite rather than knowledge,"
"misrepresented," or even "nonexistent."  *City of Livonia Emps.' Ret. Sys. & Local
295/Local 851 v. Boeing Co.*, 711 F.3d 754, 759 (7th Cir. 2013).  Witness 1 is a former
employee of an unspecified Defendant,  Compl. ¶ 70, and Witness 2 is a member of a
putative class that stands to benefit from related litigation.[5]  The witnesses' suspect
motivations and Plaintiffs' failure to meaningfully identify either, MTD 8–13, counsels
against crediting their allegations.

Even if those allegations were credited, Plaintiffs fail to show how those allegations
are sufficient to allow this case to proceed.  Witness 1's allegations are, at best, double
hearsay.  He lacks personal knowledge, and learned about the purported conspiracy from
an unnamed manager.  Compl. ¶ 72.  Plaintiffs suggest that Witness 1's manager in turn
learned about the alleged conspiracy during a telephone conversation with his unnamed
supervisor, Opp. 9, but give no details about such conversation.  Compl. ¶¶ 74–75.  This is
vague speculation resting on multiple layers of hearsay.  MTD 9–10.  Similarly, Witness
2's allegations concern an incident that allegedly took place before he assumed
management of a feedlot in 2012, three years before the purported conspiracy began in

---

[5] Reply In Support Of Defendants' Joint Motion To Dismiss The Second
Consolidated Amended Class Action Complaint, *In re Cattle Antitrust Litig.*, 19-CV-
1222 (Jan. 10, 2020), ECF No. 178 at 5.

2015, and additionally rests on hearsay from unidentified field buyers and other industry participants of other incidents in which Defendants purportedly enforced a queuing convention.  MTD 10–11.  Plaintiffs have not responded to Defendants' arguments about the speculative and hearsay-laden nature of these allegations and they cannot support a conspiracy claim.

None of the cases Plaintiffs cite credit such weak confidential witness allegations.  Opp. 14–14 n.8.  In *Zinc*, confidential witnesses alleged they were directly ordered to create false documents.  155 F. Supp. 3d 337, 352 (S.D.N.Y. 2016).  In *Gentiva*, confidential witnesses alleged they were personally pressured to commit Medicare fraud.  932 F. Supp. 2d 352, 360–61 (E.D.N.Y. 2013).  In *Nash Finch*, confidential witnesses likely had personal knowledge of improper advertising billing practices based on their job positions (witnesses included a marketing manager and an advertising manager).  502 F. Supp. 2d 861, 874–75 (D. Minn. 2007).  In *Hinds*, the confidential witness personally facilitated a bid-rigging scheme.  700 F. Supp. 2d 378, 388 (S.D.N.Y. 2010).  Here, Plaintiffs allege no involvement in the purported conspiracy by Witness 1 or 2.  And in *Packaged Ice*, the court credited hearsay allegations only after two companies and three executives pleaded guilty to criminal price-fixing charges, and certain executives—who were identified by name— were expected to testify.  723 F. Supp. 2d 987, 1012–13 (E.D. Mich. 2010).  None of those circumstances apply here, and Plaintiffs have not identified anyone who can corroborate the confidential witnesses' allegations.

III.    **Plaintiffs' "Parallel Conduct" And "Plus Factor" Allegations Do Not Provide Indirect Evidence Of A Conspiracy**

Without direct evidence of a conspiracy, Plaintiffs must plead facts that provide "specific information regarding each Defendant" and how they "affirmatively acted" in parallel with one another.  *In re Pork Antitrust Litig.*, No 18-CV-1776, 2019 WL 3752497, at *8-9 (D. Minn. Aug. 8, 2019).  Plaintiffs must also allege "plus factors" tending to exclude the possibility that Defendants acted lawfully.  *Id.* at *6.  The Complaint fails on both counts, MTD 17–29 (parallel conduct), 29–36 (plus factors), and the Opposition did not remedy its faults.

    a.  **Defendants' Conduct Was Rational And Not Parallel**

        i.  **Defendants' Individual Slaughter Volumes Independently *Increased* During The Class Period**

The "main method" by which Defendants allegedly implemented the conspiracy was to "reduc[e] the number of cattle slaughtered."  Opp. 2.  Yet annual slaughter volume data cited in the Complaint shows each Defendant increased—not decreased—its production during the supposed conspiracy, *see* MTD at 21–22, and Defendants did not act in parallel.  MTD 23 fig. 2.

7

*Defendants' Year-on-Year Change in Fed Cattle Slaughter Volume*



Plaintiffs have disputed the accuracy of this chart, which is based on the same data upon which Plaintiffs relied.  Plaintiffs argue instead that these annual volumes grew more slowly than those of independent regional packers.  Opp. 22 (citing Compl. ¶¶ 10, 11, 85).  But they do not explain how this apples-to-oranges comparison between national and regional meatpackers is indicative of coordinated conduct—and it is not.

### ii.   Defendants Did Not Close Or Idle Plants In Parallel

Plaintiffs offer no explanation for why closing and idling five plants at different times, four of which were before the conspiracy even began (and one of which was already idled when purchased by a Defendant in 2013), can plausibly support their conspiracy theory.  While there may be "no requirement that conduct outside the alleged conspiracy must be ignored," Opp. 28, there is likewise no support for a court to infer that conduct occurring before the alleged conspiracy began makes the existence of a conspiracy more

plausible.  Events that predate the alleged conspiracy have "little relevance to this case." *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan,* 203 F.3d 1028, 1037 n.7 (8th Cir. 2000).  These pre-conspiracy closures undercut the central tenet of their conspiracy— that Defendants began to engage in periodic slaughter reductions in 2015 *in response to* historically high fed cattle prices in 2014.  Compl. ¶ 124.

### iii.  Defendants' Procurement Practices Are Rational And Unilateral

None of Plaintiffs' allegations regarding allegedly coordinated procurement practices show a conspiracy.  *First*, these allegations amount to improper group pleading. *Second*, these practices reflected Defendants' unilateral, rational, business interests. Compl. 38–39 ¶¶ 1, 87–94, 107–20.  Plaintiffs argue that lawful conduct violates the Sherman Act if defendants agree to do it, citing *American Tobacco Co. v. United States,* 328 U.S. 781 (1946).  Opp. 11.  But that case affirmed a jury verdict finding an agreement. On a motion to dismiss, actions just as consistent with lawful competition as illegal conspiracy do not support an inference of conspiracy.  *In re Pork,* 2019 WL 3752497, at *6.

### a)  Queuing convention.

The alleged "queuing convention," under which the first bidder on a pen of cattle could withdraw his bid and maintain a right of first refusal to buy at that price, Compl. 38–39 ¶¶ 1, 107, does not suggest a conspiracy. The Eighth Circuit held that a bidding practice by which a packer could buy cattle simply by matching a competing packer's bid was not anticompetitive.  *IBP, Inc. v. Glickman*, 187

F.3d 974, 976 (8th Cir. 1999).  The practice at issue here—where the first bidder must *beat* a competing bid—reflects competition by definition.

The cases Plaintiffs cite are inapposite.  *See* Opp. 11 (citing *Berigan v. United States*, 257 F.2d 852, 857 (8th Cir. 1958); *National Society of Professional Engineers v. U.S.*, 435 U.S. 684 (1978)).  In *Berigan*, livestock dealers flipped coins to determine which of them would be eligible to bid and in what order.  52 F. Supp. at 478.  In *Professional Engineers*, defendants agreed not to bid against one another at all.  435 U.S. at 684.  Under the queuing convention here, any number of packers may bid, in any order and at any price.

**b)**      **Card drawing.**  Plaintiffs allege that a card-drawing scheme determined which Defendant would start the bidding each week.  Compl. ¶¶ 113–15. Plaintiffs now concede that this practice is not itself anticompetitive.  Opp. 12 (card-drawing practice "reduced competition" "[w]hen taken together with Defendants' other practices").  Although they analogize it to the coin flipping that limited the number of competitors in *Berigan,* Opp. 13, the card-drawing practice did not limit the number of potential bidders at Witness 2's feedlot.

**c)**      **Friday trades.**  Plaintiffs allege that Defendants coordinated their cash cattle purchases during a narrow time period each Friday, Compl. ¶¶ 117–18, and argue that this enabled Defendants to limit their cash cattle purchases and restrict cash cattle prices in turn.  Opp. 25.  But Plaintiffs have already acknowledged that Defendants secure a majority of their cattle through contractual arrangements, Compl. ¶ 103, so it is obviously in Defendants' unilateral interests to continue using those contracts and limit

cash cattle purchases.   And Defendants might unilaterally wish to limit cash cattle purchases at *any* time because cash cattle constitute a mere fraction of their supply.   Many pro-competitive motives might explain any decrease in cash cattle purchases that did occur.

> **d)** **Feedlot purchases.**   Plaintiffs have no answer for the fact that convenience and cost determine whether a Defendant makes the unilateral decision to bid on cattle at a particular feedlot.   Opp. 25–26.   That is likely because buying cattle in areas where prices are lower is indisputably innocent, rational conduct.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 596–97 (1986) (conduct consistent with other, equally plausible explanations does not imply conspiracy).

### iv.   Plaintiffs' Import Claims Are Implausible

Plaintiffs allege that Defendants made uneconomical imports to reduce domestic fed cattle prices.   Compl. ¶¶ 119–20.   Plaintiffs argue that "Defendants continued to import fed cattle after mid-2015, when it was more expensive than procuring fed cattle from within the United States."   Opp. 26.   But if Defendants were increasing their costs by buying imported cattle at higher prices, *see* Compl. ¶ 123, that would be antithetical to the alleged conspiracy to "increase their profits by widening the spread between the price that they pay for cattle and the price at which they sell beef," *id.* ¶ 5.

Moreover, Plaintiffs support their broad assertions with three tweets from two accounts, "The_Meat_Gentleman" and "T. Heinle."   Compl. ¶ 119 n.30.   The tweets do not identify which Defendants allegedly imported cattle, at what prices, and whether it was uneconomical to do so.   This is insufficient to support Plaintiffs' allegations of

11

uneconomical imports, much less that such imports were the result of coordination among Defendants.

### b.  Plaintiffs Ignore Defendants' Plus Factor Arguments

#### i.  Generic Industry Characteristics Are Not Plus Factors

Industry concentration and other marketplace characteristics are not plus factors indicative of conspiracy.  MTD 30–33; *see Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1317 (11th Cir. 2003).  Plaintiffs suggest this Court held otherwise in *Pork*, Opp. 31, but that opinion did not conclude that industry characteristics, standing alone, constitute a plus factor.  *In re Pork*, 2019 WL 3752497.

Plaintiffs have not identified *any* cases relying only on industry characteristics.  Opp. 32 n.20.  In the cited cases, the courts considered additional evidence that Defendants acted against self-interest, *see In re Blood Reagents Antitrust Litig.*, 266 F. Supp. 3d 750, 774 (E.D. Pa. 2017), or engaged in signaling behavior, *Precision Rx Compounding, LLC v. Express Scripts Holding Co.*, No. 4:16-CV-0069, 2016 WL 4446801, at *4 (E.D. Mo. Aug. 24, 2016).  Plaintiffs have not alleged any comparable facts here.

#### ii.  Generic Public Statements Are Not Plus Factors

Plaintiffs argue that public statements about the industry by two Defendants constitute a plus factor for all Defendants.  Opp. 37 (citing Compl. ¶¶ 135–41, 145–52). Those statements are very different from those in *Precision Rx*, 2016 WL 4446801, at *4 (cited in Opp. 37–38), where defendant announced that it planned to "eliminate 95% of revenues paid to" plaintiffs and invited others to do the same.  Plaintiffs also cite *In re Pool Products Distribution Market Antitrust Litigation*, 988 F. Supp. 2d 696 (E.D. La. 2013)

12

(cited in Opp. 37–38), but the court merely observed that some public statements *could* constitute a plus factor.  *Id.* at 711.

### iii.   Defendants' Actions In Unrelated Industries Cannot Be A Plus Factor

Plaintiffs argue that lawsuits involving chicken and pork constitute a plus factor in the beef industry.  Opp. 39 (citing Compl. ¶¶ 132, 158, 220).  But allegations of wrongdoing in one industry do not support an antitrust claim in another.  *See, e.g.*, *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 661 (S.D.N.Y. 2016).  Further, not all Defendants in this case are named in those other cases.  For example, National Beef and Cargill are not involved in either.

Plaintiffs cite two cases where courts treated government investigations of an industry as a "plus factor."  Opp. 39–40 n.25 (citing *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-CV-5263, 2017 WL 3600425, at *10 (S.D.N.Y. Aug. 18, 2017), *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010)).  In those cases, government investigations identified wrongdoing, or at least were still ongoing.  Here, the Government Accounting Office investigation ended, and the government concluded that market forces, not packer collusion, explained the movement in fed cattle prices about which Plaintiffs complain.  U.S. Gov't Accountability Off., GAO-18-296, *U.S. Department of Agriculture:  Additional Data Analysis Could Enhance Monitoring of U.S. Cattle Market* 16 (Apr. 2018), https://www.gao.gov/assets/700/691178.pdf.

13

### iv.   Defendants Acted In Their Own Self-Interests

Plaintiffs claim that Defendants' purported slaughter reductions were against their self-interest.  Opp. 38–39.  But reducing cattle purchases when fed cattle prices were "too high" (Compl. ¶ 73) to reduce losses is consistent with each Defendant's self-interest.  That is a rational response with an "independent business justification" and does not support a conspiracy claim.  *Blomkest*, 203 F.3d at 1037.

Plaintiffs argue, "[i]f Defendants' actions simply reflected seasonal changes, then one would expect that each Defendant would have taken the same actions in 2014 when prices were rising to historic highs.  In fact, they did not."  Opp. at 24 (citing Compl. ¶¶ 10–11, 85).  But the charts cited for this proposition do not show annual slaughter volumes for 2014, Compl. ¶¶ 10, 11, and cannot support Plaintiffs' argument.

## IV.   Plaintiffs' Claims Are Untimely

Plaintiffs brought their claims outside the relevant statute of limitations.  *See* MTD 38–43.  Rather than dispute this, Plaintiffs claim fraudulent concealment, which must be pleaded with particularity.  *Summerhill v. Terminix*, 637 F.3d 887, 880 (8th Cir. 2011).  Plaintiffs do not meet that standard.

*First,* Plaintiffs have not identified any affirmative acts of concealment.  Plaintiffs claim that Defendants' general statements about cattle prices, plant closures, profitability, and compliance constitute concealment.  Opp. 53.  However, "fraudulent concealment does not result from a mere failure to own up to illegal conduct, but rather occurs when defendants affirmatively attempt to deflect litigation."  *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1023 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999).  A "denial

14

of wrongdoing is no more an act of concealment than is silence." *Anderson v. Dairy Farmers of Am., Inc.*, No. 08-CV-4726, 2010 WL 1286181, at \*9 (D. Minn. Mar. 29, 2010). Plaintiffs also speculate that Defendants participated in "[t]elephone communications" with one another to conceal their actions, Opp. 53, but do not say when those calls occurred, who participated, or what was discussed.

*Second,* Plaintiffs concede they did not conduct due diligence until "recently," Opp. 54, because "[t]hey do not have access to Defendants' slaughter facilities or public data regarding the volume of beef being slaughtered." Opp. 55. But their Complaint includes ample public data, *see, e.g.,* Compl. ¶ 11, which was available months or years earlier.

*Third,* Plaintiffs allege each new beef sale "starts the statutory period running again, regardless of the plaintiffs' knowledge of the alleged illegality at much earlier times." Opp. 55. But the continuing violation doctrine "does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189–90 (1997) (internal quotations omitted). Plaintiffs concede this point by failing to address it, *See* Opp. 55, and so their claims should be dismissed.

## V.    Plaintiffs' State Claims Should Be Dismissed

### a.  Rule 23 Bars Plaintiffs From Suing Under The Laws Of States Where They Suffered No Injury

Plaintiffs' state law claims should be dismissed for the ten states where named Plaintiffs suffered no injury:  Kansas, Maine, Michigan, Mississippi, New Hampshire, Oregon, Rhode Island, South Carolina, South Dakota, and West Virginia.   MTD 47. Plaintiffs' counterarguments are unpersuasive.

15

*First*, Plaintiffs argue, "Defendants invent an additional standing element: residency within a particular state."  Opp. 57.  But Article III requires a plaintiff to "show that he is within the class of persons who will be concretely affected," *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982), and "[n]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."  *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014), aff'd, 797 F.3d 538 (8th Cir. 2015); *accord In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-CV-3690, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013). Plaintiffs argue that *Insulate* is an outlier.  Opp. 60.  Yet cases decided after *Insulate* show it is persuasive authority.  *E.g.*, *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, No. 14-MD-2586, 2018 WL 1189327, at *11 (D. Minn. Mar. 7, 2018) (quoting *Insulate*), *aff'd sub nom. In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019); *Ferrari v. Best Buy Co.*, No. 14-CV-2956, 2015 WL 2242128, at *9 (D. Minn. May 12, 2015) (same); *see also Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 863 (D. Minn. 2012) (named plaintiff cannot rely on classwide injuries).

*Second*, Plaintiffs contend there is no "class standing" requirement and a named plaintiff can assert claims for absent class members' injuries.  Opp. 58.  But this assumes a named plaintiff has standing in states where it suffered no harm, and neither of the cases Plaintiffs cite supports their theory.  *In re SuperValu, Inc.*, 870 F.3d 763, 773 (8th Cir. 2017) (named plaintiff personally had suffered an injury in fact in the relevant state); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) (same).

16

Plaintiffs invite the Court to ignore *Insulate* and "defer judgment on the standing issue" until class certification.  Opp. 59–60 (quoting *Roth v. Life Time Fitness, Inc.*, No. CV 15-3270, 2016 WL 3911875, at *4 (D. Minn. July 14, 2016)).  But "[n]ormally the Court would address [the] standing argument first, before the merits."  *Roth*, 2016 WL 3911875, at *4.  *Roth* was a unique case where "the parties ha[d] not directly briefed the [timing] issue," where "[s]tanding was only an alternative argument in the parties' briefing," and with "jurisdictional peculiarities."  *Id*. at *5.  Those unique factors are not present here.

### b. Rule 23 Does Not Permit Indirect Plaintiff Class Actions Under Illinois State Law

Plaintiffs' Illinois antitrust claims should be dismissed because Illinois law does not permit indirect-purchaser class actions, reserving this authority for the state attorney general.  MTD 53.  Plaintiffs argue this statutory ban is merely procedural and Rule 23 should control.  Opp. 62 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) (plurality)).  But *Shady Grove* interpreted a statute in New York, not a wholly different Illinois statute.  It is "intertwined" with the statute's substantive right such that applying Rule 23 as Plaintiffs advocate would improperly "abridge, enlarge, or modify" substantive rights under Illinois law.  MTD at 53–54 (quoting *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010)).  For this reason, a "majority of courts" have rejected Plaintiffs' argument.  *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 417 (D.N.J. 2018).

### c.  Plaintiffs Have Not Sufficiently Pleaded *Intra*state Conduct As Required Under Mississippi Law

Plaintiffs' Mississippi state antitrust claims should be dismissed because the Complaint does not allege that any Defendant engaged in wholly *intra*state conduct there. MTD at 54.  It only alleges that *distributors* sold Defendants' beef in Mississippi.  Compl. ¶ 322.

Plaintiffs contend they need only allege that a "broader antitrust conspiracy affected the prices of goods in Mississippi."  Opp. 64–65 (citing *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 408 (S.D.N.Y. 2011); *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 857 (E.D. Mich. 2014); *In re TFT-LCF (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009)).  *Digital Music* is irrelevant because plaintiffs did not allege any Mississippi claims.  812 F. Supp. 2d 390.  In *Auto Parts*, named plaintiffs in Mississippi purchased price-fixed products, and proposed classes lacking "such residence/in-state purchases" were dismissed.  *In re: Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2015 WL 10376960, at *7 (E.D. Mich. Dec. 30, 2015).  And in *LCD*, the court agreed "that the Mississippi Antitrust Act requires some allegations of intrastate conduct."  599 F. Supp. 2d at 1188.

### d.  Three of Plaintiffs' State Claims Are Barred By *Illinois Brick*

*Illinois Brick* bars Plaintiffs' state antitrust and consumer protection claims under the laws of Missouri, Montana, and South Carolina.  MTD 51–52.  Plaintiffs acknowledge (Opp. 97) that the Eighth Circuit adopted this anti-circumvention principle in *In re Pre-Filled Propane Tank Antitrust Litigation*, 893 F.3d 1047 (8th Cir. 2018), but claim that it

applies only to *federal* antitrust claims. But the Eighth Circuit expressly "agree[d] with" district court cases applying the anti-circumvention principle to state antitrust and disgorgement claims. *Id.* at 1058–59. Subsequent district court opinions have reached the same conclusion.

Plaintiffs argue that *Ireland v. Microsoft Corp.*, No. 00-cv-201515, 2001 WL 1868946, at *1 (Mo. Cir. Ct. Jan. 24, 2001), was abrogated by *Gibbons v. Nuckolls, Inc.,* 216 S.W.3d 667, 669–70 (Mo. 2007), and does not bar their Missouri claim. Opp. 69. But *Gibbons* was not an antitrust case and did not consider whether antitrust plaintiffs could use Missouri's consumer protection statute to avoid *Illinois Brick*. Indeed, in *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 702 (E.D. Pa. 2014), *on reconsideration in part*, No. 13-MD-2445, 2015 WL 12910728 (E.D. Pa. Apr. 14, 2015), the court dismissed unjust enrichment claims under Missouri, Montana, and South Carolina state laws, and declined to apply *Gibbons* to an antitrust claim.

### e. *AGC* Bars Many Of Plaintiffs' State Antitrust Claims

Plaintiffs' alleged injuries are too attenuated to make them efficient enforcers, so their claims should be dismissed. MTD 49–50 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*")). Plaintiffs argue *AGC* does not apply because they pleaded economic evidence of pass-on. Opp. 71. Even if they had (and they did not) such evidence would not obviate an *AGC* standing analysis.

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 223 (S.D.N.Y. 2019).

Plaintiffs further argue that *AGC* does not apply because they "participate in a restrained market." Opp. 71 (citing *In re Aftermarket Filters Antitrust Litig.*, No. 08-CV-4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)). But the allegedly restrained market involves boxed beef sold to retail and foodservice operations. Compl. ¶ 57. Plaintiffs did not purchase boxed beef from anyone; they purchased "processed" beef from retailers, *id.* at ¶ 58, and did not participate in the allegedly restrained market at all. *See, e.g.*, *Keurig*, 383 F. Supp. 3d at 223; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1090 (N.D. Cal. 2007).

The *AGC* framework does not support standing. *First*, the laws of six states—Michigan, Nevada, New Hampshire, New Mexico, New York, and South Dakota—do not protect indirect purchasers for various state-specific reasons. MTD 49–52. Plaintiffs argue that antitrust laws are designed to deter anticompetitive conduct and compensate victims. Opp. 78. But Plaintiffs have failed to allege anticompetitive conduct, and they were not victims because retail beef prices *decreased* during the alleged conspiracy.

*Second*, Plaintiffs fail to allege their injuries were causally connected to the alleged market. But Plaintiffs did not participate in the market "restrained" by the purported conspiracy. And Plaintiffs' resorting to the *Broiler* case—in which the *AGC* analysis was explicitly limited to a claim for injunctive relief—cannot support their damages claim.

20

Opp. 79 (quoting *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 813–14 (N.D. Ill. 2017)).

*Third*, Plaintiffs argue the purpose of the alleged conspiracy was to "raise, fix, or maintain the price of beef." Opp. 80. But these conclusory allegations must be disregarded, as Defendant' unilateral self-interest in reducing slaughter production and fed cattle purchases provides a plausible explanation for their actions. *See supra* SectionIII.a.i.

*Fourth*, Plaintiffs' alleged injuries are too indirect and speculative to permit recovery. Plaintiffs argue directness based on the "short and simple chain of distribution." Opp. 80. Defendants may sell beef to processors, wholesalers, distributors, or retailers (and multiple combinations thereof) before it reaches consumers. Compl. ¶¶ 5, 8, 322. Plaintiffs do not even allege how many levels of distribution existed, or how each level "processed" beef. These deficiencies sever any connection between the alleged price-fixing and Plaintiffs' injuries and render their injuries too speculative for recovery. *E.g.*, *Keurig*, 383 F. Supp. 3d at 224.

*Fifth*, Plaintiffs do not contest that others could seek damages, leading to largely duplicative relief. Opp. 81. Instead, they argue that barring duplicative recovery would make it difficult for indirect purchasers to ever recover. *Id*. But courts have not hesitated to dismiss indirect purchaser claims where they would produce duplicative recoveries and "compound[] case manageability issues without providing any clear benefit." *Keurig*, 383 F. Supp. 3d at 224 (internal quotations omitted).

### f. *AGC* Bars Claims Under The Laws Of Michigan, Missouri, Nevada, New Hampshire, New Mexico, And Rhode Island

*Michigan*.  "[T]he Michigan Supreme Court . . . would apply the *AGC* factors." *Keurig*, 383 F. Supp. 3d at 260 (citing *Stark v. Visa U.S.A. Inc.*, No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004)); *see In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-CV-3690, 2015 WL 3988488, at *10 (N.D. Ill. June 29, 2015) ("*Dairy II*").  Plaintiffs criticize *Keurig*'s reliance on a Michigan state trial court opinion. Opp. 73.  But the Michigan Court of Appeals has explained that the Sherman Act is "persuasive authority" in interpreting Michigan's antitrust laws.   *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481, 2014 WL 4743425, at *2 (S.D.N.Y. Sept. 15, 2014) (citing *Salmon v. City of Cadillac*, No. 263586, 2005 WL 3416119, at *5 (Mich. Ct. App. Dec. 13, 2005) (per curiam), *aff'd*, 833 F.3d 151 (2d Cir. 2016)).  Plaintiffs have not identified any Michigan cases that decline to follow *AGC*.

*Nevada*.  Nevada's antitrust statute must be interpreted consistent with the Sherman Act.  Nev. Rev. Stat. § 598A.050.  Plaintiffs cite a case declining to predict whether the Nevada Supreme Court would follow *AGC,* Opp. 74–75 (*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1153 (N.D. Cal. 2009)), but since then, the Nevada Supreme Court has applied *AGC* to Nevada antitrust claims.  *Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*, 423 P.3d 605, 608 (Nev. 2018).

*New Hampshire*.  District courts have applied *AGC* to claims brought under New Hampshire's antitrust laws because New Hampshire has a harmonization provision, N.H. Rev. Stat. Ann. § 356:14, and its Supreme Court adopted *Illinois Brick*'s limitation on

indirect purchaser suits. *See, e.g.*, *Keurig*, 383 F. Supp. 3d at 263 (citing *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 838 (N.H. 2002)). Plaintiffs fail to address *Minuteman* or the state's policy disfavoring indirect purchaser claims. And they give no reason to doubt that the state would apply *AGC*.

*New Mexico*. Plaintiffs concede a New Mexico court applied the *AGC* factors to an antitrust claim. Opp. 75 (citing *Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 780 (N.M. Ct. App. 2012)); *accord Keurig*, 383 F. Supp. 3d at 260 (applying *AGC* to New Mexico claims). They are left to argue—without citing any New Mexico cases—that "*courts* have declined to apply the *AGC* factors" when an indirect purchaser "was merely a downstream participant." Opp. 75 (emphasis added). That argument is better addressed when applying *AGC's* directness and causation factors, and Plaintiffs did not participate in a market for boxed beef in any event.

*New York*. New York's Donnelly Act is often called the "little Sherman Act" because it is interpreted consistently with the Sherman Act. *Keurig*, 383 F. Supp. 3d at 260. Plaintiffs concede a New York trial court applied the *AGC* factors, Opp. 75 (citing *Ho v. Visa U.S.A. Inc.*, 787 N.Y.S.2d 677 (N.Y. Sup. Ct. 2004), *aff'd*, 793 N.Y.S.2d 8 (App. Div. 2005)); *see Dairy II*, 2015 WL 3988488, at *14 ("consistently endorsed"), but argue that case is distinguishable because the direct purchasers (retail stores) raised their price on all products, not just those purchased from Defendants. Opp. 75. That argument is better addressed when applying *AGC's* directness and causation factors and does not preclude its application altogether.

23

**South Dakota**.  South Dakota has a harmonization provision, S.D. Codified Laws § 37-1-22, and its state supreme court gives great weight to "federal cases interpreting the [Sherman Act]" when interpreting state antitrust laws.  *Keurig*, 383 F. Supp. 3d at 261 (quoting *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985)).  Plaintiffs do not address the harmonization provision or *Byre*.  Opp. 76.  They cite no South Dakota cases showing South Dakota courts would not follow *AGC*.  Moreover, Plaintiffs' argument that they participated in the relevant market is wrong.  *See supra* Section I.

**Missouri**.  Plaintiffs do not contest that indirect purchaser claims are barred under Missouri's antitrust and consumer protection laws.  Opp. 76; *see* MTD 51 (citing *Ireland v. Microsoft Corp.*, 2001 WL 1868946, at *1).  Instead, Plaintiffs concede they are using the Missouri Merchandising Practices Act to circumvent the state's prohibitions on indirect purchaser antitrust claims.  Opp. 76.  The Court should not permit them to do so.  *Supra* Section V.d (discussing *Pre-Filled Propane Tank* and *Ireland*).  Again, Plaintiffs did not participate in the allegedly restrained market in any event.  *See supra* Section V.e.

**Rhode Island**.  Rhode Island has a harmonization provision, R.I. Gen. Laws § 6-36-2(b), and its Supreme Court recognized the state's antitrust laws "track" the Sherman Act.  *UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.*, 599 A.2d 1033, 1035 (R.I. 1991).  The state's Superior Court approvingly cited *AGC* in discussing proximate cause.  *Cortellesso v. Cortellesso*, No. C.A. NO. P.C. 95-457, 1997 WL 839911, at *7 (R.I. Super. Apr. 29, 1997).  Plaintiffs again fail to cite any cases where a Rhode Island court declined to follow *AGC*.

### g.  Plaintiffs Fail To Plead Consumer Protection Claims In Any State

### i.  Plaintiffs Have Not Met Their Burden Under Rule 9

The Eighth Circuit forecloses Plaintiffs' argument that they need not meet the heightened pleading requirements of Rule 9(b) for their state-law consumer protection claims.  *See Olin v. Dakota Access, LLC*, 910 F. 3d 1073, 1075 (8th Cir. Dec. 13, 2018). Here, nearly all of Plaintiffs' consumer protection claims expressly allege fraudulent conduct.  MTD 58–59.

Plaintiffs ignore or mischaracterize case law demonstrating that Rule 9(b) applies because five states require pleading fraud or deception with particularity.  *See E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012) (Minnesota); *Kearns*, 567 F.3d at 1125 (California); *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 463–64 (D.D.C. 1997) (District of Columbia); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (Florida); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1107 (S.D. Ind. 2001) (Michigan).

Seeking to avoid their Rule 9(b) obligations, Plaintiffs claim their fraud allegations are "not essential" to their "price-fixing claims."  Opp. 83.  But those claims are premised on allegations that Defendants created "an *artificial* sense of urgency that encouraged producers to accept the Meatpacking Defendants' low initial offers," and offered

25

"*pretextual* explanations" for each alleged plant closure.  Compl. ¶¶ 100, 111 (emphasis added); *see also* MTD 58–59.[6]

### ii. Eight Consumer Statutes Do Not Apply To Price-Fixing Allegations

Eight statutes prohibit pursuing price-fixing claims under the guise of consumer protection claims.

*Illinois.*  Plaintiffs rely on *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1048 (N.D. Ill. 2007).  Opp. 89.  *Siegel* has been criticized for ignoring the Illinois Supreme Court's holding that the Illinois Consumer Fraud Act is not "an additional antitrust enforcement mechanism."  *Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 788 (N.D. Ohio 2011).  Furthermore, *Siegel* has been rejected in indirect purchaser class actions, which are not permitted under Illinois law.  *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1075 (S.D. Cal. 2017).

*Oregon.*  Plaintiffs cite a single decision for the proposition that "price fixing constitutes 'unconscionable conduct'" under the Oregon statute.  Opp. 91 (citing *In re Packaged Seafood*, 242 F. Supp. 3d at 1084).  But that decision held that price fixing was unconscionable only because plaintiffs "specifically allege[d] false and misleading representations made by defendants to plaintiffs."  *In re Packaged Seafood*, 242 F. Supp. at 1084.  Here, Plaintiffs have conceded the lack of such allegations.

---

[6] Plaintiffs' failure to plead reliance is another reason to dismiss four of these claims.  MTD 61–62.  Plaintiffs (Opp. 87) ignore cases upholding the need to plead reliance, and cite only a decision that does not address the statutes' reliance requirements.

**Utah.** Plaintiffs misread *Garrard v. Gateway Fin. Servs., Inc.*, 207 P.3d 1227, 1229 (Utah 2009), which limits Utah Protection Act ("UPA") claims to those brought by business competitors, a holding confirmed by subsequent decisions. *See, e.g.*, *Snap Advances LLC v. SHG of Illinois, LLC*, 2019 WL 7505555, at *2 (D. Utah Feb. 12, 2019). Plaintiffs are consumers, not competitors, and may not bring a UPA claim. Further, no Utah court has held that price-fixing is "unconscionable" under the Consumer Sales Practices Act, a statute which does not even identify price fixing as actionable. MTD 61.

**Rhode Island.** "[U]nfair competition" under Rhode Island law is limited to conduct that "tend[s] to confuse and mislead the general public into purchasing [defendant's] product." *ERI Max Entertainment Inc. v. Streisand*, 690 A.2d 1351, 1353 (R.I. 1997). Plaintiffs have made no such allegations. Dismissal is also required because the statute does not list price-fixing among the twenty types of actionable conduct. MTD 60.

**Michigan, Minnesota, and New Mexico.** Plaintiffs largely cite broad language to support their far-reaching interpretation of these statutes, but do not address case law holding that these statutes do not cover price-fixing, absent well-pleaded allegations of fraud, misrepresentation, or reliance (which are lacking here). *See, e.g.*, *In re Graphics Processing Units*, 527 F. Supp. 2d 1011 (holding that the New Mexico statute requires alleged fraud or misrepresentation); MTD 59–60. Plaintiffs' repeated citation on *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, is also unavailing because that case was premised on specifically alleged fraudulent conduct. 737 F. Supp. 2d 380, 414 (E.D. Pa. 2010).

27

### iii.  Plaintiffs Fail To Plead Necessary Intrastate Conduct In Three States

Contrary to Plaintiffs' argument, allegedly inflated prices are an *effect* and cannot be used as a substitute for the requisite factual allegations about in-state *conduct*.

**Florida.**  Although Plaintiffs try to claim that mere Florida residency suffices to show intrastate conduct, "[t]he pertinent question is not the citizenship of the Plaintiff, but rather the connection of the Defendants' alleged activities with Florida." *Solyom v. World Wide Child Care Corp.*, 2015 WL 6167411, at *2 (S.D. Fla. Oct. 15, 2015); *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So. 2d 1256, 1261–62 (Fla. 3rd DCA 2000).

**New Hampshire.**  The statute applies only to alleged wrongful "*conduct* of any trade or commerce *within this state*."   N.H. Rev. Stat. Ann. § 358-A:2 (emphasis added). *LaChance v. U.S. Smokeless Tobacco Co.* is distinguishable because anticompetitive conduct *within* New Hampshire was specifically alleged.  931 A.2d 571, 573 (N.H. 2007).

**North Carolina.**  Plaintiffs must allege that "wrongful conduct *occurred in North Carolina*" and "allegations that indirect purchasers paid inflated prices are not sufficient to establish a substantial, in-state injury."  *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 549 (N.D. Ill. 2019) (emphasis added).[7]

---

[7] In addition, Plaintiffs claim under Mass. Gen. Laws Ann. Ch. 93A, §9," Opp. 76, should not be sustained because Plaintiffs only "reserve[d] their right to bring" such a claim, Compl. ¶ 469.

### h.  All Of Plaintiffs' Unjust Enrichment Claims Fail

Plaintiffs agree their unjust enrichment claims are entirely derivative of their antitrust-conspiracy claims.  Opp. 6; *see* MTD 65.  If their federal claims fail, their unjust enrichment claims must also fail for that reason and several others:

***Inadequately pleaded.***   Plaintiffs' conclusory, two-sentence unjust enrichment pleadings are inadequate because they do not account for the "consequential differences that may exist among" the states.  MTD 65–66 (quoting *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 726 (N.D. Ill. 2016)); *see* Compl. ¶¶ 622–23.  Plaintiffs' response focuses only on the common elements.  Opp. 92.  They ignore the fact that many states have additional elements, *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 514 (D. Minn. 2014), and that they needed to plead facts to establish—not merely assert—that they meet those elements.

***No direct benefit.***  Seven states (Florida, Kansas, Maine, Michigan, North Carolina, Rhode Island, and Utah) require the defendant to have received an unjust benefit directly from the plaintiff.  MTD 66-67 & n.21.  Plaintiffs' claim to the contrary is wrong.  Here, Defendants did not directly receive anything from Plaintiffs; Plaintiffs are indirect purchasers.  Compl. ¶¶ 25–44.

Most of the cases Plaintiffs cite (for Florida, Kansas, Michigan, Rhode Island, and Utah) predate the cases that Defendants cite and do not reflect the current state of the law.[8]

---

[8] For example, Plaintiffs cite a Florida intermediate appellate court decision from 2005, *see* Opp. 93, yet in 2017, Florida's Supreme Court held that "to prevail on an unjust

The cited language in the Maine case, for example, is dicta because the court already had rejected the unjust enrichment claim.  *See Everest v. Leviton Mfg. Co.*, 2006 WL 381832, at *3 (Me. Sup. Ct. Jan. 13, 2006).   And the North Carolina case involved a direct relationship:  the defendant previously paid the plaintiff and allegedly withheld the final payment.  *Embree Const. Group, Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 919 (N.C. 1992).

Plaintiffs also argue that courts do not require a direct benefit when "antitrust defendants conspire to fix prices."  Opp. 93–94.  The cases they cite do not stand for that blanket, nationwide proposition.  Rather, in each case cited, the plaintiffs pleaded unjust enrichment under multiple laws, and the court determined on a state-by-state basis whether the unjust enrichment claim for that state could proceed.  *See, e.g.*, *In re Automotive Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1015–16 (E.D. Mich. 2014).

***No duty.***   Unjust enrichment claims in Illinois and South Carolina require that the defendant owe the plaintiff a legal duty.  Plaintiffs have not alleged any such duty here.  MTD 67.  Plaintiffs cite (Opp. 94) *Sobel v. Franks*, but that case concerned whether a *fiduciary* duty is required for a claim of unjust enrichment.  633 N.E.2d 820, 829 (Ill. Ct. App. 1994).  Later Illinois cases clarify that a plaintiff must allege "an independent basis that establishes a duty on the part of the defendant to act." *Phila. Indem. Ins. v. Pace*

---

enrichment claim, the plaintiff must directly confer a benefit to the defendant," *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (cited at MTD 67 n.21).  Similarly, Plaintiffs cite two Michigan cases, *see* Opp. 93, yet Michigan's intermediate appellate court later explained that both cases "make it clear" that "the benefit must be received *directly* from the plaintiff."  *Smith v. Glenmark Generics, Inc., USA*, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) (cited at MTD 67 n.21).

*Suburban Bus Serv.*, 67 N.E.3d 556, 570 (Ill. Ct. App. 2016).  Plaintiffs also cite (Opp. 94) *Ellis v. Smith Grading & Paving, Inc.*, 366 S.E.2d 12 (S.C. Ct. App. 1988), but that case did not address the duty requirement, *id.* at 15.

*Adequate legal remedy.*  Eleven states (Arizona, Iowa, Kansas, Massachusetts, Minnesota, Nebraska, Nevada, New Hampshire, South Dakota, Tennessee, and Utah) do not permit unjust enrichment claims where the plaintiff has an adequate legal remedy. MTD 68.  Plaintiffs' state-law antitrust and consumer protection claims provide that remedy.  Plaintiffs note they are allowed to plead in the alternative and to bring legal and equitable claims in the same suit.  Opp. 95 (citing Fed. R. Civ. P. 8, 18).  But "the issue here is not one of pleading."  *U.S. v. Bame*, 721 F.3d 1025, 1031 (8th Cir. 2013).  The claims fail as a matter of the states' substantive laws because "the existence of an adequate legal remedy . . . precludes unjust enrichment" altogether.  *Id.*

*Not a stand-alone claim.*  Unjust enrichment is not a stand-alone cause of action in California and New Hampshire.  MTD 70.  California law is clear that "[u]njust enrichment is not a cause of action."  *De Havilland v. FX Networks, Inc.*, 21 Cal. App. 5th 845, 870 (2018) (internal quotations omitted).  The New Hampshire case invoked by Plaintiffs expressly holds that "unjust enrichment generally does not form an independent basis for a cause of action."  *Gen. Insulation Co. v. Eckman Constr.*, 992 A.2d 613, 621 (N.H. 2010) (internal quotations omitted).

**CONCLUSION**

Plaintiffs had multiple opportunities to plausibly allege a conspiracy claim.  They failed each time and provided no reason to excuse their failures.  Consequently, the Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted this 3rd day of February 2020.

s/ Benjamin L. Ellison
Andrew M. Luger, Reg. No. 0189261
Benjamin L. Ellison, Reg. No. 0392777
**JONES DAY**
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
(612) 217-8862
aluger@jonesday.com
bellison@jonesday.com

Julia E. McEvoy
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3867
jmcevoy@jonesday.com
*Admitted Pro Hac Vice*

Paula W. Render
**JONES DAY**
77 West Wacker, Suite 3500
Chicago, Illinois 60601-1692
(312) 269-1555
prender@jonesday.com
*Admitted Pro Hac Vice*

*Counsel for Defendant National Beef
Packing Company, LLC*

s/ Donald G. Heeman
Donald G. Heeman, Reg. No. 0286023
Jessica J. Nelson, Reg. No. 0347358
Randi J. Winter, Reg. No. 0391354
**SPENCER FANE**
150 South Fifth St.
Suite 1900
Minneapolis, MN 55402
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen Neuwirth
Sami H. Rashid
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
51 Madison Avenue
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com
*Admitted Pro Hac Vice*

Ethan Glass, Reg. No. 0316490
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8265
ethanglass@quinnemanuel.com

*Counsel for Defendant
JBS USA Food Company Holdings*

s/ David P. Graham
David P. Graham, Reg. No. 0185462
**DYKEMA GOSSETT, PLLC**
4000 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com

Jon B. Jacobs
Jeremy C. Keeney
**PERKINS COIE LLP**
700 13th Street, NW, Suite 600
Washington, DC 20005
(202) 654-1758
jbjacobs@perkinscoie.com
jkeeney@perkinscoie.com
*Admitted Pro Hac Vice*

Susan E. Foster
Ulrike B. Connelly
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8846
sfoster@perkinscoie.com
uconnelly@perkinscoie.com
*Admitted Pro Hac Vice*

*Counsel for Defendant Tyson Foods, Inc.*

s/ Kathryn N. Hibbard
Kathryn N. Hibbard, Reg. No. 0387155
X. Kevin Zhao, Reg. No. 0391302
**GREENE ESPEL PLLP**
222 South 9th Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
khibbard@greeneespel.com
kzhao@greeneespel.com

Mark W. Ryan
Michael E. Lackey, Jr.
Nicole A. Saharsky
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20009
(202) 263-3338
mryan@mayerbrown.com
mlackey@mayerbrown.com
nsaharsky@mayerbrown.com
*Admitted Pro Hac Vice*

*Counsel for Defendant
Cargill, Incorporated*