UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KENNETH PETERSON, et al.,

    Plaintiffs,

v.

JBS USA FOOD COMPANY HOLDINGS, TYSON FOODS, INC., CARGILL, INC., and NATIONAL BEEF PACKING COMPANY, LLC,

    Defendants.

Case No. 0:19-cv-01129-JRT-HB

**NATIONAL BEEF PACKING COMPANY, LLC'S REPLY TO PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

Despite their many attempts, Plaintiffs have repeatedly failed to allege an antitrust conspiracy in the beef industry, or allege that National Beef was any part of it. Now, borrowing heavily from the plaintiffs' briefs in *In re Cattle Antitrust Litigation*,[1] Plaintiffs offer a confused—and confusing—array of arguments that are alternatively unresponsive to National Beef's arguments, or affirmatively unhelpful to their cause.

**Slaughter volumes.** In support of their claim that Defendants improperly reduced their slaughter volumes, Plaintiffs allege that National Beef closed its Brawley, California plant. SAC ¶ 90.[2] Plaintiffs' claim suffers from two deficiencies: National Beef closed the plant before the alleged conspiracy began, and legitimate business reasons—in

---

[1] *See* Plaintiffs' Opposition To Defendant National Beef Packing Company's Motion To Dismiss The Second Consolidated Amended Class Action Complaint, *In re Cattle Antitrust Litig.*, No. 19-CV-1222 (Dec. 13, 2019 D. Minn.), ECF No. 168.

[2] Plaintiffs' Second Amended Class Action Complaint, ECF No. 114 ("SAC").

1

particular, a decline in fed cattle supply in the region—justified the closure. *Id.* ¶ 90; N. Br. 3 n.3 (citing Progressive Cattleman, *National Beef Plant Closing Brawley Facility* (March 24, 2014), https://www.progressivecattle.com/news/industry-news/national-beef-plant-closing-brawley-facility).[3] Plaintiffs respond that the closure was part of a pattern of refraining from expanding slaughter capacity or increasing utilization. Opp. at 48.[4] This argument is belied by Plaintiffs' own allegations. National Beef's slaughter volume ***increased*** every year of the supposed conspiracy for which Plaintiffs provide any data. SAC ¶ 11. Moreover, while Plaintiffs fail to allege any specific facts regarding National Beef's utilization rate, they rely on a statement by Jeffries Financial Group, which was National Beef's controlling shareholder at the time, that the company had "greater capacity utilization [in 2017] versus 2016." *Id.* ¶ 216.

Plaintiffs further argue that National Beef "conspicuously avoids mentioning how [it] rejected a significant package of incentives from local governments, utilities, and nearby feedlots." Opp. at 48. However, in the Progressive Cattleman article cited above, National Beef explained that "[e]ven with the proposed incentive package, the declining supply of fed cattle available for the Brawley facility remains the key driver of our

---

[3] National Beef Packing Company, LLC's Memorandum In Support Of Its Motion To Dismiss The Second Amended Class Action Complaint, ECF No. 123 ("N. Br.")

[4] Plaintiffs' Omnibus Opposition to Defendants' Motion to Dismiss the Second Amended Class Action Complaint, ECF No. 134.

decision to close the plant."[5] This was not just National Beef's opinion. As the same article explained, local officials agreed that cattle supply was an issue for the company.

Plaintiffs mistakenly claim that "National Beef ignores that its average slaughter volumes remained artificially low during the Class Period compared to its average slaughter volume in the years before the Class Period." Opp. at 49. National Beef (and all of the other Defendants) previously explained that Plaintiffs' reliance on average slaughter volumes is obfuscating. In particular, it fails to show both the increase in slaughter volume during the Class Period, and that all Defendants did not reduce their fed cattle slaughter volume from 2014 to 2015. *See* Mot. to Dismiss at 18–23.[6]

Plaintiffs reply that National Beef's annual slaughter volume grew at a slower rate than that of independent regional packers. Opp. 49 (citing SAC ¶ 11). But Defendants—including National Beef—are quite different from independent packers: they are larger, and they operate nationally as opposed to regionally. *See* SAC ¶ 11. Plaintiffs do not explain how this apples-to-oranges comparison between national and regional meatpackers is indicative of coordinated conduct—and it is not.

**Public statements.** Plaintiffs paint various public statements by National Beef's investors as an indication that the company took efforts to conceal the supposed conspiracy. Opp. at 48. But investors who mention a company's results in one breath are

---

[5] Progressive Cattleman, *National Beef Plant Closing Brawley Facility* (March 24, 2014), https://www.progressivecattle.com/news/industry-news/national-beef-plant-closing-brawley-facility.

[6] Defendants' Memorandum in Support of the Motion to Dismiss the Second Amended Class Action Complaint, ECF No. 118 ("Joint Brief").

not required to explain how it achieved those results in the next, nor is the lack of an explanation indicative of a conspiracy. "[F]raudulent concealment does not result from a mere failure to own up to illegal conduct, but rather occurs when defendants affirmatively attempt to deflect litigation." *In re Milk Prod. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1023 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999).

**Queuing convention.** Plaintiffs allege that the supposed "queuing convention" was rigorously enforced. But the sole example they allege literally involves only *half* the supposed conspiracy members. Specifically, they allege that in 2012 (before the conspiracy period), Witness 2's feedlot received regular bids from National Beef and Cargill, while Tyson and JBS supposedly boycotted the feedlot to enforce the convention. SAC ¶ 107. So much for "strict adherence." And notably, this specific allegation shows that National Beef did not participate in any such convention. Plaintiffs' conclusory argument now that National Beef "enforced the convention against all cash cattle sellers, not just Witness 2's feedlot," Opp. at 49, does not square with the allegations in the Complaint and cannot salvage the queuing convention claim.

**Imports.** Plaintiffs concede that they fail to allege that National Beef increased its import of fed cattle during the class period. Opp. at 49. Plaintiffs rejoin that this is of "no consequence," given National Beef's "other acts in furtherance of the conspiracy." *Id.* The problem for Plaintiffs is that they have not yet established that a conspiracy exists. Without specific allegations about National Beef, Plaintiffs cannot lump the company together with the other Defendants to establish the existence of parallel

conduct.  *See In re Pork Antitrust Litig.*, No. 18-CV-1776, 2019 WL 3752497 at *8 (D. Minn. Aug. 8, 2019).

**Uneconomical shipping.**  Plaintiffs finally allege that National Beef "transport[ed] U.S.-bought cattle over uneconomically long distances to depress prices in AMS LMR regions."  Opp. at 49.  But Plaintiffs fail to include a single specific allegation that National Beef bought cattle over uneconomically long distances, relying instead on generalized statements about shipments from unidentified Twitter accounts.  SAC ¶ 119 n.30 (quoting The_Meat_Gentleman (@blakealbers), TWITTER (Nov. 16, 2015, 12:02 PM), *available at* https://twitter.com/blakealbers/status/666300194338660353; T. Heinle (@ndsuhsker), TWITTER (Feb. 26, 2016, 7:37 AM), *available at* https://twitter.com/ndsuhsker/status/703197081205391360; T. Heinle (@ndsuhsker), TWITTER (April 14, 2016, 5:45 PM), *available at* https://twitter.com/ndsuhsker/status/720729811241414656).  Such unsupported, unidentified statements do not "raise a right to relief above the speculative level."  *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (citations and internal quotations omitted).

* * *

For all the reasons discussed above, Plaintiffs' allegations against National Beef are insufficient to establish that it was part of any antitrust conspiracy.  The claims against it must be dismissed.[7]

---

[7] Plaintiffs incorrectly assert in their opposition brief that National Beef failed to address "extensive allegations" against it.  Opp. at 47.  Those allegations are all

| | |
|---|---|
| Dated: February 3, 2020 | By:  *s/* Benjamin L. Ellison<br>Andrew M. Luger (#0189261)<br>Benjamin L. Ellison (#0392777)<br>JONES DAY<br>90 South 7th Street, Suite 4950<br>Minneapolis, MN 55402<br>(612) 217-8800<br>aluger@jonesday.com<br>bellison@jonesday.com<br><br>Julie E. McEvoy*<br>JONES DAY<br>51 Louisiana Ave., N.W.<br>Washington, D.C. 20001-2113<br>(202) 879-3867<br>jmcevoy@jonesday.com<br><br>Paula W. Render*<br>JONES DAY<br>77 West Wacker Dr., Suite 3500<br>Chicago, IL 60601-1692<br>(312) 269-1555<br>prender@jonesday.com<br><br>***ATTORNEYS FOR DEFENDANT NATIONAL BEEF PACKING COMPANY, LLC***<br><br>*admitted *pro hac vice* |

---

addressed in Defendants' Joint Brief, which National Beef also incorporated by reference in its individual brief.  N. Br. 4 n.4.

Furthermore, as set forth in the Defendants' Joint Brief, there are numerous other infirmities with Plaintiffs' conspiracy allegations.  National Beef adopts and incorporates by reference all of those arguments herein.

6