# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH PETERSON et. al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>JBS USA FOOD COMPANY HOLDINGS, TYSON FOODS, INC., CARGILL, INC., and NATIONAL BEEF PACKING COMPANY,<br><br>　　　　　　　　　　Defendants. | Case No. 0:19-cv-01129 (JRT/HB) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF JBS USA FOOD COMPANY HOLDINGS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

JBS USA Food Company Holdings' motion to dismiss showed that (1) the SAC is devoid of factual allegations that *any* JBS entity engaged in *any* anticompetitive conduct, and (2) Plaintiffs have repeatedly sued a JBS entity that is merely a holding company that could not engage in the alleged anticompetitive conduct. Plaintiffs are unable to refute these points, confirming that dismissal with prejudice is required.

### I. Plaintiffs Make No Specific Allegations of Anticompetitive Conduct by Any JBS Entity

Plaintiffs contend there was a "concerted scheme to suppress throughput of beef" beginning in 2015 and that the "Meatpacking Defendants" "agree[d] to reduce slaughter capacity by closing or idling slaughter plants." SAC ¶¶ 1, 67; *see also* Opp. 2. But as Plaintiffs' opposition concedes, there is no allegation that any JBS entity closed or even instituted the idling of a plant either *before* or *during* the alleged conspiracy. Rather,

Plaintiffs argue that "Cargill, National Beef, and Tyson all closed plants between February 2013 and August 2015, *while JBS left a plant idle*." Opp. (Dkt. 134) 28 (emphasis added). This argument effectively concedes that JBS' conduct was not remotely parallel with that of any other Defendant.[1] Moreover, an allegation that JBS acquired an *already-idled* plant almost two years *before* the start of the alleged conspiracy, and decided in 2013 to keep the plant idle, is not an allegation that JBS "affirmatively acted to reduce the supply" of beef – that is, the "type of information" that "is vital to pleading parallel conduct." *See In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/HB), 2019 WL 3752497, at *8 (D. Minn. Aug. 8, 2019) ("*In re Pork*"); *see also* JBS Mem. (Dkt. 127) at 2-3.

Plaintiffs also do not dispute that materials cited in the SAC actually show that *JBS expanded capacity during the alleged conspiracy*. JBS Mem. 3-4. This guts Plaintiffs' conclusory and wholly unsubstantiated assertion that JBS purportedly "agreed to refrain from increasing slaughter capacity." Opp. 28; *see also* SAC ¶ 67. It is well established that "courts need not accept 'factual assertions that are contradicted by' . . . documents upon which the pleadings rely." *Williams v. First Nat'l Bank of St. Louis*, No. 4:14-CV-01458, 2014 WL 5800199, at *4 (E.D. Mo. Nov. 7, 2014). And while Plaintiffs argue that "Tyson and JBS both decreased capacity by six percent" between *2014 and 2016*, Opp. 3 (citing SAC ¶ 85), this assertion deliberately obscures that, even according

---

[1] Nor were the other Defendants' alleged plant closures parallel in time. Joint Mem. (Dkt. 118) 19.

to Plaintiffs' own chart, JBS dramatically *increased* production in 2016. SAC ¶ 11; *see also* Joint Mem. 22-23.

In light of the foregoing, Plaintiffs are left to argue that the "fact that [JBS] didn't close a plant does not negate its part in the conspiracy," making the circular assertion that "[w]hen viewed in conjunction with Plaintiffs' additional allegations in the Complaint, Plaintiffs clearly show that JBS' actions are consistent with conspiratorial conduct." Opp. 46. But, given that JBS is accused of participating in a "an illegal scheme to artificially reduce the supply of beef," *see* Opp. 2, "additional allegations" cannot cure the complete lack of any specific beef supply cut allegations by any JBS entity. *In re Pork*, at *8.

Moreover, the "additional allegations" that Plaintiffs deploy amount to generalized, and improper, group pleading allegations concerning *all* Defendants. Opp. 46-47 (citing SAC ¶ 110 (noting only that the alleged queueing convention would have "enabled" all Defendants to monitor each other); ¶¶ 101-106 (generalized allegations about all Defendants); ¶¶ 107-117 (same); ¶ 67 (same)); *see also* JBS Mem. 4-5. Plaintiffs' unnamed witness allegations likewise fail to mention *any* specific actions by *any* JBS entity; rather, they generically lump JBS in with the other Defendants. SAC ¶¶ 69-84; 107-18. For example, Plaintiffs allege every Defendant, including JBS, purportedly visited Witness 2's feedlot to enforce the queueing convention, but provide no details at all on when any such visits occurred, except that it was *sometime after the fall of 2012*, years before the alleged conspiracy began. Opp. 46; SAC ¶ 107.

3

Finally, Plaintiffs argue that "JBS issued public statements communicating and affirming" its "commitment to reducing slaughter volume and capacity throughout the conspiracy." Opp. 37 (citing SAC ¶¶ 135-141, 145-52). But that argument finds no support in the Complaint, as the cited allegations are merely irrelevant quotations taken from various JBS entities' public earnings call statements about the *profits* of JBS' businesses, not statements about supply reductions. *See e.g.*, SAC ¶ 135 ("On August 11, 2016, JBS reported that it expected the beef business to have an EBITDA margin of 4-5 percent for the rest of the year and that 'we are very positive now that second half we are going to see this positive cycle showing in the results and showing in our results.'").[2]

Given all of this, JBS should not be "forced" into costly antitrust discovery without a single concrete allegation that it engaged in any suspect conduct during the conspiracy. *In re Pork*, at *9.

## II.    The SAC Improperly Names JBS USA Food Company Holdings

Plaintiffs baldly claim that "JBS USA [Food Company Holdings] directs and oversees all of JBS's U.S. cattle procurement, slaughter, and fabrication activities." Opp. 47. But there are no such allegations in the Complaint supporting that assertion.

The claim is also false, because publicly-available materials demonstrate that JBS USA Food Company Holdings, as its name suggest, is merely a holding company. JBS Mem. 7-8. That is presumably why Plaintiffs' counsel here – substantially the same

---

[2]  Plaintiffs also ignore that the cited earnings calls actually show that JBS' EBIDTA *fell* during the alleged conspiracy, thus directly contradicting the allegations that JBS' margins soared. JBS Mem. at 6-7.

4

counsel representing the *Pork* plaintiffs – *dismissed* JBS USA Food Company Holdings from the *Pork* litigation after the Court recognized that "in order for antitrust allegations against a subsidiary to be fairly made against the parent company, there must be allegations that the parent company actually engaged in anticompetitive conduct and not merely that it served as parent to its wholly-owned subsidiary." *In re Pork*, at *9 (citing *Reg'l Multiple Listing Serv. of Minn., Inc. v. Am. Home Realty Network, Inc.* ("*MLS*"), 9 F. Supp. 3d 1032, 1045 (D. Minn. 2014)). The Complaint here lacks *any* allegations that JBS USA Food Company Holdings (or any JBS entity) "actually engaged in anticompetitive conduct." The two cases Plaintiffs cite on this point – *MLS* and *H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1549 (8th Cir. 1989) (parent company "cannot be held liable 'as an actor' without proof that *it* performed acts sufficient to create liability") (emphasis in original) – only support dismissal here.

## CONCLUSION

For the foregoing reasons and those in JBS USA Food Company Holdings' opening brief, JBS USA Food Company Holdings respectfully submits the claims against it should be dismissed with prejudice.

Dated: February 3, 2020         /s/ *Jessica J. Nelson*
                                Donald G. Heeman (#0286023)
                                Jessica J. Nelson (#0347358)
                                Randi J. Winter (#0391354)
                                SPENCER FANE LLP
                                150 South Fifth Street, Suite 1900
                                Minneapolis, MN 55402
                                Telephone: (612) 268-7000
                                dheeman@spencerfane.com
                                jnelson@spencerfane.com
                                rwinter@spencerfane.com

                                Stephen R. Neuwirth (*pro hac vice*)
                                Sami H. Rashid (*pro hac vice*)
                                QUINN EMANUEL URQUHART & SULLIVAN LLP
                                51 Madison Avenue, 22nd Floor
                                New York, NY 10010
                                Telephone: (212) 849 7000
                                stephenneuwirth@quinnemanuel.com
                                samirashid@quinnemanuel.com

                                Ethan Glass (#316490)
                                QUINN EMANUEL URQUHART & SULLIVAN LLP
                                1300 I Street NW Suite 900
                                Washington, D.C. 20005
                                Telephone: (202) 538-8265
                                ethanglass@quinnemanuel.com

                                *Counsel for Defendant JBS USA Food Company Holdings*