# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH PETERSON, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> JBS USA FOOD COMPANY HOLDINGS, TYSON FOODS, INC., CARGILL, INCORPORATED, and NATIONAL BEEF PACKING COMPANY, <br><br> Defendants. | Case No. 19-cv-1129-JRT-HB |

**Reply Memorandum of Law in Support of Tyson Foods, Inc.'s Motion to Dismiss the Second Amended Class Action Complaint**

# TABLE OF CONTENTS

                                                **Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ................................................................................................ 1

ARGUMENT ........................................................................................................ 2

I.     Plaintiffs' allegations fail to establish that any "Tyson" entity participated in a conspiracy ................................................................. 2

        A.     Tyson did not "fail to address" allegations against it ..................... 2

        B.     Plaintiffs' slaughter data is consistent with innocent conduct ............................................................................................ 3

        C.     Tyson's plant closures are not evidence of a conspiracy ................ 5

        D.     Tyson's earnings call statements are not evidence of a conspiracy .......................................................................................... 6

        E.     Driving by competitors' plants and observing publicly available information is not evidence of a conspiracy ........................... 7

II.    Plaintiffs fail to link Tyson Foods, Inc. to any conspiracy ...................... 7

CONCLUSION ..................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................5

*Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*,
  203 F.3d 1028 (8th Cir. 2000) (en banc) .................................................... 2, 3

*Christy Sports, LLC v. Deer Valley Resort Co.*,
  555 F.3d 1188 (10th Cir. 2009) ................................................................6

*Drury Inn-Colo. Springs v. Olive Co.*,
  878 F.2d 340 (10th Cir. 1989) ..................................................................6

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-MD-2481, 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014),
  *supplemented*, 2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014),
  *aff'd*, 833 F.3d 151 (2d Cir. 2016) ............................................................ 8, 9

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) ..........................................................4

*In re Pork Antitrust Litig.*,
  No. CV 18-1776, 2019 WL 3752497 (D. Minn. Aug. 8, 2019) .......................6

*In re Text Messaging Antitrust Litig.*,
  782 F.3d 867 (7th Cir. 2015) ....................................................................7

*Lerma v. Univision Commc'ns, Inc.*,
  52 F. Supp. 2d 1011 (E.D. Wis. 1999) .......................................................5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................ 4, 7

# INTRODUCTION

Plaintiffs' third attempt to set forth a plausible claim of a slaughter reduction and price-fixing conspiracy against the Tyson Defendants still suffers from fatal defects mandating dismissal. In fact, in their Opposition Brief, Plaintiffs concede that many of the Tyson-specific allegations found in the Second Amended Complaint are not even evidence of a conspiracy. They now recast Tyson's Cherokee plant closure in 2014 as merely "factual context." And Tyson's earnings call statements are now described as "additional factual enhancements"—at most, plus factors. Moreover, Plaintiffs do not contest that Tyson's beef unit operating margins are not evidence of a conspiracy, or that Tyson's underestimated forecasts belie the existence of a plausible conspiracy. The few remaining allegations are insufficient to plead Tyson's participation in any conspiracy. Indeed, the slaughter figures in the Second Amended Complaint affirmatively show that Tyson did not act in parallel with its competitors. For these reasons, all claims against all Tyson entities should be dismissed.

In addition to their failure to allege any cognizable claim as to the Tyson Defendants as a whole, Plaintiffs have independently failed to plead how Tyson Foods, Inc. (the parent company) did anything to coordinate or advance the alleged conspiracy. Accordingly, all claims against Tyson Foods, Inc. must be dismissed.

# ARGUMENT

## I. Plaintiffs' allegations fail to establish that any "Tyson" entity participated in a conspiracy.

The few, sparsely pled "Tyson"-specific allegations included in the Complaint do not plausibly show Tyson's participation in a conspiracy. Tyson Br. 4.[1] Plaintiffs' counterarguments are not persuasive.

### A. Tyson did not "fail to address" allegations against it.

Tyson's motion to dismiss addressed Plaintiffs' Tyson-specific allegations and even included an appendix listing them. Tyson Br. & App. A. Plaintiffs argue that "Tyson fail[ed] to address" "extensive allegations" pled against it in the Complaint, citing a list of eight purported examples. Opp. 42.[2]

Such an assertion is patently false. Each 'example' was addressed in Tyson's initial brief. Tyson Br. 6 (events in 2012 and 2013, years before the alleged conspiracy began, are not evidence of conspiracy, *citing Blomkest Fertilizer, Inc. v. Potash Corp. of Sask.*, 203 F.3d 1028, 1037 n.7 (8th Cir. 2000) (en banc)); *id.* at 4 & fig.1 (2015 and 2016 production levels show Tyson did not act in parallel with other Defendants); *id.* at 5 (addressing allegations

---

[1] Tyson's Mem. of Law in Support of Tyson's Mot. to Dismiss the Second Am. Class Action Compl., ECF No. 130 [hereinafter Tyson Br.].
[2] Pls.' Omnibus Opp. to Defs.' Mot. to Dismiss the Second Am. Class Action Compl., ECF No. 134 [hereinafter Opp.].

- 2 -

about the Cherokee and Denison plant closures); *id.* at 7 (routine investor call in 2015 was not evidence of conspiracy).

One of the examples highlighted by Plaintiffs even mischaracterizes their own allegations in the Second Amended Complaint. In their Opposition Brief, Plaintiffs claim that "[w]hile shrinking capacity, Tyson *consistently* reported 'historically high wholesale beef prices[.]'" Opp. 43 (quoting Compl. ¶ 93) (emphasis added). Yet the Complaint cites only *one* 2014 filing as reporting "historically high wholesale beef prices." Compl. ¶ 93. And because it occurred before the Class Period, it cannot be evidence of a conspiracy. *Blomkest*, 203 F.3d at 1037 n.7.

### B. Plaintiffs' slaughter data is consistent with innocent conduct

Plaintiffs' slaughter data undercuts any inference that Tyson acted in concert with the other Defendants to reduce slaughter production. Tyson Br. 4. In fact, Defendants' year-to-year production changes were not 'parallel':

*Figure 1: Defendants' Year-on-Year Change in Fed Cattle Slaughter Volume*



Plaintiffs do not contest the accuracy of this figure.

Instead, they argue that "lockstep" slaughter reductions are not needed to show parallel conduct because the data is "consistent with . . . short-term withdrawals from the cash cattle market[.]" Opp. 43–44. But Plaintiffs cite no data showing that Tyson (or any other Defendant) "managed" its cash-cattle purchases or slaughter volumes in the undefined short-term time periods alleged in the Complaint. Nor do they cite any cases to support their argument about "lockstep" reductions in this part of their brief, although they do cite the *Broiler* case in support of this same argument earlier. *Id.* at 21. But the *Broiler* case is very different than this one. There, plaintiffs alleged that three defendants cut production after a trade meeting in January 2008 and that five other defendants cut production three months later. *In re Broiler Chicken Antitrust Litig.,* 290 F. Supp. 3d 772, 782, 791 (N.D. Ill. 2017). It may not be necessary to allege simultaneous parallel action to survive a motion to dismiss, but a plaintiff must still allege facts *inconsistent* with innocent conduct. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97 (1986) ("if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy"). Plaintiffs have not done so here. Contrary to the *Broiler* allegations, there is simply no discernable pattern to the year-to-year slaughter production changes by Tyson and the other Defendants. *See supra* fig.1.

## C. Tyson's plant closures are not evidence of a conspiracy.

The Complaint cites Tyson's closure of two Iowa plants, one in Cherokee in 2014 and another in Denison in 2015, as evidence of a conspiracy. But neither shows Tyson acting in parallel with other Defendants. Tyson Br. 5. Because Tyson closed its Cherokee, Iowa plant before the conspiracy allegedly started, Plaintiffs now concede that the closure is merely "factual context for the remainder of Plaintiffs' conspiracy allegations." Opp. 44.

That leaves two plant-related acts during the Class Period. In August 2015, Tyson closed its Denison, Iowa plant. Compl. ¶ 94. But the Denison closure was not 'parallel' with anything. Tyson Br. 7. In September 2018, Tyson sold its closed Cherokee, Iowa plant to a competing meat processor. Compl. ¶ 97. Clearly, the Cherokee sale increased industry slaughter capacity. Such an action would not make sense if Tyson was simultaneously conspiring to decrease slaughter capacity.

Plaintiffs characterize these arguments about common sense as inappropriate "spin" on the facts. Opp. 44. But "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011, 1025 (E.D. Wis. 1999) (antitrust claim must make "factual sense"). It also does not make sense that Tyson would sell

its Cherokee plant to an independent meat processor (instead of another Defendant) if it was conspiring with Defendants to restrict industry slaughter capacity.[3]

### D. Tyson's earnings call statements are not evidence of a conspiracy.

Plaintiffs concede that statements made by Tyson executives during investor calls are not evidence of a conspiracy. Instead, Plaintiffs describe the statements as merely "additional factual enhancements that support the plausibility of the conspiracy and tie Tyson to it." Opp. 45. And Plaintiffs do not contest (nor can they) that the statements do not reference either "restraining supply capacity" or "artificially inflat[ing] . . . margins." Tyson Br. 7. Contrary to Plaintiffs' arguments, these statements do not "enhance[]" or "support" the alleged conspiracy—but rather illustrate "the dearth of specific allegations" in the Second Amended Complaint. *In re Pork Antitrust Litig.*, No. CV 18-1776 (JRT/LIB), 2019 WL 3752497, at *8 (D. Minn. Aug. 8, 2019).

---

[3] Contrary to Plaintiffs' argument, Opp. 45 n.29, the Tenth Circuit concluded "we cannot label the . . . restrictive covenant a prohibited price fixing agreement." *Drury Inn-Colo. Springs v. Olive Co.*, 878 F.2d 340, 343 (10th Cir. 1989); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1190 (10th Cir. 2009) (enforcement of covenant by revoking approval after 15 years of prior approvals did not violate Sherman Act).

### E. Driving by competitors' plants and observing publicly available information is not evidence of a conspiracy.

Plaintiffs argue that it does not matter whether monitoring competitors by driving by their plants to determine and report on operating levels is legal. Opp. 45. But Plaintiffs must allege facts inconsistent with innocent conduct to plead a plausible conspiracy—they do not. *See Matsushita*, 475 U.S. at 596–97. Collecting competitive intelligence is expected because "[c]ompetitors in concentrated markets watch each other like hawks." Tyson Br. 9 (quoting *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 875 (7th Cir. 2015)).

Moreover, it is implausible that Defendants would use such an unsophisticated method—driving by competitors' plants—to monitor compliance with Plaintiffs' alleged conspiracy. Defendants supposedly agreed to reduce "chain speeds" and drop their kill levels, for example, from 6,000 to 5,200 head per day. Compl. ¶ 83. It is doubtful that a driver looking at a plant's parking lot could detect such precise slaughter reductions. Such innocent and independent conduct cannot legally or plausibly support a conspiracy.

### II. Plaintiffs fail to link Tyson Foods, Inc. to any conspiracy.

The Complaint names only "Tyson Foods, Inc."—the parent company—as a defendant and fails to allege any facts that "Tyson Foods, Inc."

participated in a conspiracy. Tyson Br. 2. Plaintiffs' counterarguments are not persuasive.

First, Plaintiffs argue that Tyson Foods, Inc. directly participated in the conspiracy because it "took specific action, separate and apart from the subsidiary's actions." Opp. 43. They cite two examples: "Tyson [Foods, Inc.] directed the allegedly illegal activities, including the purchase and slaughter of fed cattle" and "took affirmative steps to conceal the conspiracy." *Id*. But Plaintiffs do not cite any paragraphs in the Complaint to support the first example because <u>there are none</u>. And Plaintiffs do not cite any paragraphs in the Complaint to support the second example, but presumably are referring to generic, public statements made by "Tyson" in SEC filings and investor calls, which the Complaint calls "pretextual." Compl. ¶¶ 210–11. Plaintiffs have not demonstrated that any of these statements were "pretextual." Regardless, Plaintiffs have failed to plead any concealment. Joint Reply[4] 14-15.

Second, Plaintiffs argue "Tyson cannot . . . seek dismissal focusing only on those allegations directed at Tyson alone." Opp. 43. But it can. Courts do not hesitate to dismiss claims against certain parties when Plaintiffs fail "to state a claim against each and every defendant joined in th[e] lawsuit." *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481, 2014 WL

---

[4] Defs.' Reply in Support of Defs.' Mot. to Dismiss the Second Am. Class Action Compl. (filed Feb. 3, 2020) [hereinafter Joint Reply].

- 8 -

4277510, at *38 (S.D.N.Y. Aug. 29, 2014), *supplemented*, 2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014), *aff'd*, 833 F.3d 151 (2d Cir. 2016).

**CONCLUSION**

For the reasons set forth in the joint briefs, the Second Amended Complaint should be dismissed with prejudice. For the reasons set forth above, at a minimum Tyson Foods, Inc. should be dismissed as a defendant.

Date: February 3, 2020

Respectfully submitted,

*/s/ David P. Graham*
David P. Graham (0185462)
**DYKEMA GOSSETT, PLLC**
4000 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Tel: (612) 486-1521
dgraham@dykema.com

Jon B. Jacobs
Jeremy C. Keeney
**PERKINS COIE LLP**
700 13th Street, NW, Suite 600
Washington, DC 20005
Tel: (202) 654-1758
jbjacobs@perkinscoie.com
jkeeney@perkinscoie.com
*Admitted Pro Hac Vice*

Susan E. Foster
Ulrike B. Connelly
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Tel: (206) 359-8846
sfoster@perkinscoie.com

uconnelly@perkinscoie.com
*Admitted Pro Hac Vice*

*Counsel for Tyson Foods, Inc.*