# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH PETERSON et al., <br><br> Plaintiffs, <br> v. <br><br> JBS USA FOOD COMPANY HOLDINGS et al., <br><br> Defendants. | Case No. 19-cv-1129-JRT-HB |

**REPLY BY CARGILL, INCORPORATED IN SUPPORT OF THE MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

As detailed in Cargill, Incorporated's individual motion to dismiss, Plaintiffs' allegations against Cargill are fatally sparse. *See* Mem. in Supp. Cargill's Mot. to Dismiss, ECF No. 125 (Cargill Mem.). Neither confidential witness has personal knowledge of an alleged conspiracy, let alone personal knowledge of a conspiracy that involves Cargill specifically. *Id.* at 3-5. And the data cited in the complaint runs counter to Plaintiffs' theory that Cargill agreed with other Defendants to reduce its slaughter volumes; it shows that Cargill actually increased cattle slaughter volumes every year of the alleged conspiracy and did not act in parallel with other Defendants. *Id.* at 6-7.

Plaintiffs' opposition fails to provide any real answer to the arguments in Cargill's individual motion to dismiss. Plaintiffs dedicate exactly one paragraph of their 98-page omnibus opposition (Opp., ECF No. 134) to allegations against Cargill. *See id.* at 41-42. Plaintiffs' three categories of allegations – (1) confidential witness allegations; (2) Cargill-specific allegations; and (3) conclusory, undifferentiated allegations against all Defendants

1

– fail to demonstrate that Cargill took any actions in furtherance of the alleged conspiracy. Accordingly, even if Plaintiffs had adequately alleged a conspiracy (which they have not), they have not alleged that *Cargill* was part of that conspiracy.[1]

*Confidential witness allegations.* Plaintiffs argue that "Witness 1 knew that each Defendant, including Cargill, had signed on to the agreement" to decrease cattle slaughter volumes. Opp. 41. But that is not what the complaint says. In the complaint, Witness 1 admits that he had no first-hand knowledge of *any* agreement, much less an agreement involving Cargill – the most he can say is that he "understood" there was an agreement from his conversation with his fabrication manager. SAC ¶ 76. And the complaint does not say how the fabrication manager knew (or would be in a position to know) of any agreement that Cargill supposedly "signed on to." Opp. 41. This double, uncorroborated hearsay is simply not enough to link Cargill to a conspiracy.

Plaintiffs further argue that Cargill "visited [Witness 2's] feedlot to enforce strict adherence to the queuing convention, and . . . threatened boycotts to ensure adherence." Opp. 41. But again, that is not what Plaintiffs pleaded in the complaint. The only allegation of a boycott does not involve Cargill, and Witness 2 states that Cargill buyers continued to visit his feedlot after his feedlot violated the alleged queueing convention. SAC ¶ 107. It would make no sense to infer that Cargill's continued visits to this feedlot could be part of a scheme to *boycott* feedlots.

---

[1] As Cargill, Incorporated explained, Plaintiffs sued the wrong entity – only Cargill Meat Solutions Corporation (and not Cargill, Incorporated) sells beef. Cargill Mem. 2 n.1.

*Cargill-specific allegations.* As Cargill explained in its opening brief, the fatal flaw in Plaintiffs' case against Cargill is that Cargill's actions, as shown by Plaintiffs' own data, were inconsistent with the claimed conspiracy. The claimed conspiracy involves decreasing cattle slaughter volumes so that fed cattle prices would go down. The complaint itself pleads that Cargill increased slaughter volumes during each and every year of the conspiracy. Cargill Mem. 6-7; *see* SAC ¶¶ 11 fig., 85.

In their response, Plaintiffs acknowledge that Cargill did not reduce its slaughter numbers during the period of the claimed conspiracy. Opp. 42. But they claim that Cargill's slaughter volume increases are consistent with a conspiracy, because without the alleged agreement, Cargill would have increased slaughter volumes even more than it did. *Id.* Plaintiffs' complaint contains no allegations to back this up; it is purely speculation, and that is not enough to allow the claims against Cargill to proceed.

Plaintiffs also allege that Cargill "closed two slaughter plants." Opp. 41. But, as Plaintiffs acknowledge, those closures "occurred . . . outside the alleged conspiracy period," *id.* at 28, and so they cannot be evidence of the supposed conspiracy. Plaintiffs' theory is that Defendants started the alleged conspiracy in 2015 *in response to* high fed cattle prices in late 2014, SAC ¶¶ 66-67; it makes no sense to link plant closures in 2013 and 2014 to a conspiracy that had not yet commenced.

*Remaining allegations.* Plaintiffs contend, without more, that Cargill "limit[ed] its purchase of cash cattle" and "coordinat[ed] its procurement operations." Opp. 42. But the complaint does not allege any facts to show that Cargill did either of those things. All of the allegations about limiting purchases of cash cattle and using the same procurement

3

practices (such as making trades on Fridays) are undifferentiated group allegations against all Defendants. This Court should not credit them because they are "conclusory" and not "well-pleaded." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009).

That is it – those are the only allegations that Plaintiffs say link Cargill to their alleged conspiracy. Those allegations are plainly insufficient to show that Cargill was part of any conspiracy. Accordingly, if the Court does not dismiss the complaint altogether, the Court should at a minimum dismiss the claims against Cargill, Incorporated. And for the reasons provided in the joint motion to dismiss, that dismissal should be with prejudice.

Date: February 3, 2020  Respectfully submitted,

s/ *Kathryn N. Hibbard*
Kathryn N. Hibbard, Reg. No. 0387155
X. Kevin Zhao, Reg. No. 0391302
**GREENE ESPEL PLLP**
222 South 9th Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
khibbard@greeneespel.com
kzhao@greeneespel.com

Mark W. Ryan
Michael E. Lackey, Jr.
Nicole A. Saharsky
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20006
(202) 263-3338
mryan@mayerbrown.com
mlackey@mayerbrown.com
nsaharsky@mayerbrown.com
*Admitted Pro Hac Vice*

*Counsel for Defendant Cargill, Incorporated*