# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE CATTLE ANTITRUST LITIGATION<br><br>This document relates to:  ALL CASES | Case No. 19-cv-1222 (JRT/HB)<br><br>**SECOND ORDER ON DISCOVERY PENDING RESOLUTION OF MOTIONS TO DISMISS** |
| KENNETH PETERSON, et al.<br><br>Plaintiffs,<br><br>v.<br><br>JBS USA FOOD COMPANY HOLDINGS, et al.<br><br>Defendants. | Case No. 19-cv-1129 (JRT/HB) |
| IN RE DPP BEEF LITIGATION<br><br>This document applies to:  ALL CASES | Case No. 20-cv-1319 (JRT/HB) |
| ERBERT & GERBERT'S, INC.<br><br>Plaintiff,<br><br>v.<br><br>JBS USA FOOD COMPANY HOLDINGS, et al.,<br><br>Defendants. | Case No. 20-cv-1414 (JRT/HB) |

Pursuant to the Joint Stipulation on Discovery Pending Resolution of Motions to Dismiss in the above-captioned cases, and after consideration of the parties' arguments regarding certain disputed issues,[1]

**IT IS HEREBY ORDERED** that:

1. The Protective Order entered by the Court in the related *In re Cattle*, No. 19-1222, and *Peterson, et al. v. JBS USA Food Company Holdings, et al.*, No. 19-1129, actions [ECF Nos. 197 and 151, respectively] shall be adopted in the *DPP Beef* and *Erbert & Gerbert's* cases, as well. The parties in the *DPP Beef* and *Erbert & Gerbert's* cases shall submit a Proposed Protective Order to the Court that conforms to the Protective Order entered in *In re Cattle* and *Peterson*.

2. The parties in the *DPP Beef* and *Erbert & Gerbert's* cases are continuing to meet and confer regarding entry of the ESI Protocol entered by the Court in the related *In re Cattle*, No. 19-1222, and *Peterson, et al. v. JBS USA Food Company Holdings, et al.*, No. 19-1129, cases [ECF Nos. 197 and 151, respectively] (as amended on August 31, 2020 [*Cattle* ECF No. 250; *Peterson* ECF No. 183]), as well, and are discussing potential revisions to that ESI Protocol. The parties shall jointly submit a Proposed

---

[1] The disputed matters were discussed in Exhibit B to the parties' Joint Agenda (*see, e.g., In re Cattle,* ECF No. 251 at 30-32), and are resolved at Paragraphs 4(a) (including footnote 2) and 9 of this Order, and Paragraphs 1(a)(i)(4)(b) and 1(a)(i)(4)(c) of Attachment 1 hereto. The Court has also added a deadline to Paragraph 3 of this Order for the submission of an agreement or a joint status report by the *DPP Beef* and *Erbert & Gerbert's* Plaintiffs regarding an ESI Protocol. Finally, the Court notes that the paragraphs of this Order and Attachment 1 are numbered slightly differently from the parties' proposed order and attachment—the Court broke the parties' proposed Paragraph 3 into two paragraphs in this Order, and corrected errors in numbering in the parties' proposed Attachment 1.

        ESI Protocol to the Court or, if they are unable to reach agreement on the form of the ESI Protocol, shall submit a Joint Status Report that sets forth their respective positions on any terms to which they cannot agree on or before September 22, 2020.

3. In the meantime, the parties in the *DPP Beef* and *Erbert & Gerbert's* cases shall participate in the process set forth in Section V.B.1 of the ESI Protocol [*Cattle* ECF No. 250; *Peterson* ECF No. 183] regarding proposals and counterproposals for Document Custodians, non-custodial sources, and date ranges (with meet and confers to follow). Specifically:

   a. The parties in *DPP Beef* and *Erbert & Gerbert's* shall propose an initial list of (i) Document Custodians, (ii) non-custodial sources, and (iii) date ranges, and that initial proposal shall be sent by the Producing Party to the other Parties at the same time the Producing Party serves its written responses to the Requests for Production authorized below.

   b. Within 14 days of receipt of the Producing Party's initial proposal, all other Parties in *DPP Beef* and *Erbert & Gerbert's* will be allowed to propose additional Document Custodians or non-custodial document sources as well as make any counter-proposals on date ranges.

   c. Consistent with Section V.A.3 ("Non-Waiver"), the Parties' discussion of proposed Document Custodians and non-custodial document sources does not preclude a Party from requesting additional Document Custodians or non-custodial sources.

4. The Court's Order on Discovery Pending Resolution of Motions to Dismiss filed in the related *In re Cattle* and *Peterson* cases [ECF Nos. 196 (*Cattle*) & 150 (*Peterson*)]

shall also be deemed applicable in the *DPP Beef* and *Erbert & Gerbert's* cases (as may be amended by the Court), with the addition of the following terms that shall be applicable only in the *DPP Beef* and *Erbert & Gerbert's* cases:

a. For purposes of the *DPP Beef* and *Erbert & Gerbert's* cases, Attachment 1 hereto shall supersede and supplement the Amended Attachment 1 to the Order on Discovery Pending Resolution of Motions to Dismiss [ECF Nos. 196 & 206 (*Cattle*), ECF Nos. 150 & 160 (*Peterson*)].  Defendants must disclose the documents and/or information described in Attachment 1 hereto within ten calendar days after entry of this Order, except that Defendants shall have until **September 25, 2020**, to supplement the disclosures called for in Attachment 1 hereto with any additional information required by Paragraphs 1(a)(i)(4)(b) and 1(a)(i)(4)(c) that was not required by the corresponding paragraphs in Amended Attachment 1 in *In re Cattle* and *Peterson*.[2]  Plaintiffs in *DPP Beef* and *Erbert & Gerbert's* must disclose the documents and/or information described in Attachment 1 hereto no later than thirty calendar days after entry of this Order, without the need for a request pursuant to Rule 34.

b. Defendants in *DPP Beef* and *Erbert & Gerbert's* shall serve their Rule 26(a)(1) Initial Disclosures **no later than ten calendar days after** entry of this Order.  Plaintiffs in *DPP Beef* and *Erbert & Gerbert's* must serve Rule

---

[2] For the convenience of the parties, the Court has identified the additional information in Attachment 1 by underlining.

        26(a)(1) Initial Disclosures **no later than thirty calendar days after** entry of this Order.

  c.    Initial Rule 34 Requests for Production:

      i.    Defendants, collectively, may serve no more than a total of 20 Rule 34 requests on each Plaintiff in *DPP Beef* and *Erbert & Gerbert's*. They may serve common requests or defendant-specific requests, or a combination thereof, but they must meet and confer with each other about any requests to be served to assure that this limit is not exceeded. Defendants shall serve these initial requests **no later than one business day after** entry of this Order (with responses due **30 days after service**).

      ii.    The *DPP Beef* and *Erbert & Gerbert's* Plaintiffs shall not be permitted to serve Rule 34 requests at this time.  However, the *Peterson* Plaintiffs' initial Rule 34 requests to Defendants shall be deemed to have been served on Defendants in *DPP Beef* and *Erbert & Gerbert's* (with responses due to Plaintiffs in *DPP Beef* and *Erbert & Gerbert's* **within ten calendar days after** entry of this Order).

      iii.    This Order is without prejudice to any party's ability to seek to serve additional Rule 34 requests (and related custodians) after and if the motions to dismiss are denied.

  d.    As reflected in the Court's Order on Discovery Pending Resolution of Motions to Dismiss filed in the related *In re Cattle* and *Peterson* cases [ECF Nos. 196 (*Cattle*) & 150 (*Peterson*)], the "foregoing discovery will proceed in these

matters as to all parties *other than JBS, S.A.*, and all other discovery (including all discovery as to JBS, S.A.) will be **STAYED** pending resolution of Defendants' motions to dismiss."

5. Meet and Confers Regarding Rule 34 Responses and Objections:

   a. The parties are to meet and confer on all parties' Rule 34 responses and objections as follows:

      i. <u>Plaintiffs' Objections and Responses</u>:  The parties shall meet and confer separately regarding the responses and objections by (1) the *Cattle* Plaintiffs; (2) the *Peterson* Plaintiffs; and (3) the *DPP Beef* Plaintiffs; (4) and the *Erbert & Gerbert's* Plaintiffs.  The *Cattle* and *Peterson* parties are to meet and confer by Friday, October 23, 2020.  The *DPP Beef* and *Erbert & Gerbert's* parties are to meet and confer about Plaintiffs' responses and objections in those cases within 30 days of their service.

      ii. <u>Defendants' Objections and Responses</u>:  The parties shall jointly meet and confer regarding Defendants' responses and objections to Plaintiffs' Rule 34 Requests by Friday, **October 23, 2020**.  To the extent the *Cattle, Peterson, DPP Beef,* and *Erbert & Gerbert's* parties do not take common positions as to Defendants' responses and objections due to the differences between the cases, the parties may, after their initial meet and confers, break into separate meet and confers to address issues that are unique to that Plaintiffs' case.

        iii.      <u>Motion Practice</u>:  When conducting these meet and confers, the parties should presume that the motions to dismiss are denied in their entirety. Because decisions on the various motions to dismiss may differently impact the track of each of these cases, after motions to dismiss are decided, and if those motions are not granted in their entirety, the parties to that case, and any case decided contemporaneously, shall meet and confer within 10 days of that decision to determine whether that decision changes the scope of the case in a way that changes their positions regarding Rule 34 responses and objections.  Only thereafter may the parties to those cases file motions to resolve any disputes regarding Rule 34 responses and objections.  The fact that the Court has rendered a different decision in relation to Defendants' motion to dismiss in one or more of the other cases captioned above, or has yet to issue a decision on such motions in the other cases, does not preclude a party from bringing a motion to resolve a dispute in relation to Rule 34 responses and objections in their case.

6.    Meet and Confers Regarding Custodian, Noncustodial Source, and Date Range Proposals:

    a.    <u>Updating original initial proposals in the *Cattle & Peterson* Cases</u>:  The parties in these cases shall serve updated initial proposals that reflect the presumptive date range ordered by the Court's August 31, 2020 Order [*Cattle* ECF No. 250; *Peterson* ECF No. 183] by Tuesday, **September 15, 2020**.

b. <u>Counterproposals in the *Cattle & Peterson* Cases</u>:  As noted above, the parties in these cases have already served their initial proposals.  Plaintiffs also served their counterproposals, though they may be subject to revision based on the Court's August 31, 2020 Order [*Cattle* ECF No. 250; *Peterson* ECF No. 183] and paragraph 5(a) above.  The parties in these cases shall serve their counterproposals by Tuesday, **September 22, 2020**.

c. <u>Plaintiffs' Custodians and Noncustodial Sources</u>:  The parties may meet and confer separately regarding the proposals and counterproposals regarding Plaintiffs' custodians and noncustodial sources.  The *Cattle* and *Peterson* parties are to meet and confer by Friday, **October 30, 2020**.  The *DPP Beef* and *Erbert & Gerbert's* parties are to meet and confer **within 21 days** of the Defendants' counterproposal.  The meet and confers may occur either in conjunction with or following the meet and confers regarding Plaintiffs' Rule 34 responses and objections.

d. <u>Defendants' Custodians and Noncustodial Sources</u>:  The parties shall meet and confer regarding the proposals and counterproposals regarding Defendants' custodians and noncustodial sources by Friday, **October 30, 2020**.  These meet and confers shall occur either in conjunction with or following the meet and confers regarding Defendants' Rule 34 responses and objections.  To the extent the *Cattle, Peterson, DPP Beef*, and *Erbert & Gerbert's* parties do not take common positions as to Defendants' custodians and noncustodial sources due to the differences between the cases, the parties may, after their initial

    meet and confers, break into separate meet and confers to address any issues that are unique to that Plaintiffs' case.

  e. <u>Date Ranges</u>:  The parties shall discuss their proposed and counter-proposed date ranges during their meet and confers regarding Rule 34 responses and objections.

  f. <u>Motion Practice</u>:  When conducting these meet and confers, the parties should presume that the motions to dismiss are denied in their entirety.  Because decisions on the various motions to dismiss may differently impact the track of each of these cases, after the motions to dismiss are decided, and if those motions are not granted in their entirety, the parties to that case, and any case decided contemporaneously, shall meet and confer **within 10 days** of that decision to determine whether that decision changes the scope of the case in a way that changes their positions regarding custodians, noncustodial sources, or date ranges.  Only thereafter may the parties to those cases file motions to resolve any disputes regarding custodians, noncustodial sources, or date ranges.  The fact that the Court has rendered a different decision in relation to Defendants' motion to dismiss in one or more of the other cases captioned above, or has yet to issue a decision on such motions in the other cases, does not preclude a party from bringing a motion to resolve a dispute in relation to Rule 34 responses and objections in their case.

7. No communication among Plaintiffs' counsel in these actions or any later-filed related actions or among counsel for Defendants in these actions or any later-filed

related actions shall be asserted or taken as a waiver of any privilege or protection to which they would otherwise be entitled.

8. For any class as to which the Court has appointed interim co-lead counsel, Defendants shall only be required to provide the above-referenced disclosures and Rule 34 responses to the appointed interim co-lead counsel.

9. The Court expects the parties to work together to coordinate discovery in the above-captioned cases, where appropriate and practicable, in a manner that reduces needless duplication and inefficiency, keeping in mind the goal of Federal Rule of Civil Procedure 1 to promote the just, speedy, and inexpensive resolution of these cases.

**IT IS SO ORDERED.**

Dated: September 8, 2020   　　　　　s/ *Hildy Bowbeer*
　　　　　　　　　　　　　　　　　HILDY BOWBEER
　　　　　　　　　　　　　　　　　United States Magistrate Judge

## ATTACHMENT 1

The parties in *DPP Beef* and *Erbert & Gerbert's* will disclose the following documents and/or information for the period from January 1, 2014, to December 31, 2019, to the extent such documents exist and are readily available.

As part of these initial, limited disclosures, the parties need not disclose every document falling within items 1-6, but will disclose documents sufficient to show the requested information for each year at issue to the extent such documents exist and are readily available.  Such disclosures will be subject to a duty to supplement or amend the disclosures once discovery commences, and further subject to modification by any party upon a showing that complying with such disclosure would be unduly burdensome.

By providing information pursuant to these disclosures, the parties do not waive or limit their respective rights to object to, or oppose, any request for further disclosure or discovery.

The omission of any particular category of documents from this Order does not preclude the parties from seeking such documents in discovery once discovery commences. In making the disclosures pursuant to this Attachment, a disclosing party is not making any representations regarding whether it may use any documents, people, or information in support of its claims or defenses, reserves all rights to challenge the relevance of any disclosures, and is not agreeing that the persons disclosed possess information relevant to the claims or defenses.

1. **Organizational Charts**:

    a. **Defendants**:

        i. Organizational charts sufficient to show the names and titles of individuals with the following positions or responsibilities relating to cattle and/or beef:

            1. member of the board of directors;

            2. all executives with the title of Director, Vice President, or higher (such as SVP, CEO, COO, CFO, etc.), as well as their administrative assistants or secretaries;

            3. investor and/or creditor relations;

            4. the person or persons (if any, and excluding any clerical-level or administrative-level personnel) who have primary responsibility for:

                a. fed cattle procurement;

                b. slaughter plant capacity/utilization, scheduling and/or operation;

                c. beef sales, pricing, and production levels;

                d. submitting purchase and sale data to the USDA pursuant to the Livestock Mandatory Reporting Act.

            5. the person or persons who supervise the department responsible for beef or carcass sales to, purchases from, trades with, or co-packing transactions with other beef packers;

6. all executives with the title of Director, Vice President, or higher, as well as certain limited executives with the title of Manager,[3] whose primary responsibilities include determining or approving a Defendant's fed cattle procurement, slaughter levels, beef production levels and sales volumes and prices, and who were an officer or board member of, or otherwise formally-designated participant (such as a member of a relevant committee) of any of the following:

   a. National Cattlemen's Beef Association;

   b. U.S. Meat Export Federation;

   c. North American Meat Institute;

   d. Global Roundtable for Sustainable Beef; and

   e. U.S. Roundtable for Sustainable Beef.

7. all executives with the title of Director, Vice President, or higher, as well as certain limited executives with the title of Manager, whose primary responsibilities include determining or approving a Defendant's own fed cattle pricing, procurement, or slaughter levels, and/or Defendant's own beef pricing, inventory, export and production levels.

---

[3] "Manager," as used in this subparagraph and in subparagraph 7 below, includes only individuals whose position makes them the highest level executive overseeing a specific beef complex, but not individuals with the position of "manager" who report to such individuals.

      ii.      Defendants may create a list of individuals with the job responsibilities listed in item 1(a)(i) above in lieu of producing a formal organizational chart, so long as such a list provides, to the extent the information is readily available, the individual's name, title, the time period during which they held that title, and for item 1(a)(i)(6) above, the name of the trade association of which they were an officer, board member, or formally-designated participant and any committee memberships held.

      iii.      With respect to items 1(a)(i)(4), 1(a)(i)(5), and 1(a)(i)(7) above, to the extent that a particular position at a Defendant's cattle and/or beef facilities typically fulfills the particular job responsibility at issue, a Defendant may simply identify that position and the estimated number of individuals who held that position during the relevant period.

  b.    ***DPP Beef* Plaintiffs**: Organizational charts sufficient to show the names and titles of individuals in the following positions or responsibilities:

    i. all executives with the title of Director, Vice President, Manager,[4] or higher;

    ii. individuals with primary responsibility for the procurement of beef;

    iii. individuals with primary responsibility for determining, monitoring or analyzing beef pricing, marketing, production, and supply; and

---

[4] "Manager," as used in this subsection 1(e), includes the highest level of "manager" and does not include individuals with the position of "manager" who report to such individuals.

14

        iv. individuals with primary responsibility for managing the relationship between Plaintiff and any Defendant (if any).

    c. ***Erbert & Gerbert* Plaintiffs**:  Organizational charts sufficient to show the names and titles of individuals in the following positions or responsibilities:

        i. all executives with the title of Director, Vice President, Manager, or higher;

        ii. individuals with primary responsibility for the procurement of beef;

        iii. individuals with primary responsibility for monitoring or analyzing (a) beef pricing, production, and supply; and (b) fed cattle pricing, supply, and slaughter levels, and

        iv. individuals with primary responsibility for managing the relationship between Plaintiff and any defendant (if any).

    d. Plaintiffs may create a list of individuals with the job responsibilities listed above in paragraphs 1(b) and (c) in lieu of a formal organizational chart, so long as such a list provides, to the extent the information is readily available, the individual's name, title, and the time period during which they held that title.

2. **Email Systems**:  Identification of the email system used, including the name of the email system, version number (including applicable dates for different versions, if readily available), and time period or number of days for which email is retained on the system.

3.  **Non-custodial Data Sources**: A list of known non-custodial data sources (*e.g.*, shared drives, servers, etc.), if any, likely to contain discoverable ESI. These lists will identify the databases that are likely to contain discoverable "structured data."

4.  **Document Retention Policies**: Document retention and/or destruction policies, including policies or systems that automatically deleted certain types of documents or data (*e.g.*, email) after a certain period, that applied to documents and data likely to be relevant to the claims or defenses in these cases and that were in effect at any time during the period from January 1, 2014, to December 31, 2019.

5.  **Employee Technology Use Policies**: Employee Technology Use Policies in effect during the period of January 1, 2014, to December 31, 2019, including (if they exist) policies concerning use by employees of cellphones, notebook computers, and tablets for business purposes. Without intending to limit, such policies may go by the following names: bring-your-own device (BYOD) policies, choose-your-own-device (CYOD) policies, corporate-liable-employee- owned (CLEO) policies, corporate-owned/personally enabled (COPE) policies, mobile-device-management (MDM) policies, and dual-use device policies. Plaintiffs and Defendants will disclose if they had no such policies during the identified time period.

6.  **Inaccessible Data**: A list of known data sources, if any, likely to contain discoverable ESI and that the party asserts are not reasonably accessible under Rule 26(b)(B) or Rule 26(b)(2)(C)(i).